186 So.2d 68 (1966)
Nicholas C. EVANOFF, Appellant,
v.
CITY OF ST. PETERSBURG, Appellee.
No. 5540.
District Court of Appeal of Florida. Second District.
April 29, 1966.
Rehearing Denied May 24, 1966.
Masterson, Lloyd & Rogers, St. Petersburg, for appellant.
Carl R. Linn and Harry I. Young, St. Petersburg, for appellee.
PIERCE, Judge.
On the evening of July 11, 1962, acting upon a report of an attempt to rob a Madeira Beach Bank, an officer in a police cruiser of the City of Madeira Beach tried to stop and question the driver of a Chevrolet automobile in Madeira Beach who was suspected of having participated in the attempted robbery. The suspect refused to submit and proceeded to drive away at a high rate of speed. The Madeira Beach police car thereupon took up the chase, pursuing the Chevrolet at a very high rate of speed through Madeira Beach, through the adjoining community of Treasure Island, and on into the Metropolitan City of St. Petersburg. Up to this point, the two cars were estimated as going at a rate of speed from 70 to 80 miles per hour on up to *69 100 miles an hour as they were gathering steam on St. Petersburg streets. Several shots were fired at the pursued vehicle during the Gulf Beach chase, and the Madeira Beach police established communication with the St. Petersburg police department, and several St. Petersburg police cruisers joined the pursuit as it reached that City. A police road block was attempted to be set up near the boundary entrance to the City proper, but the pursued vehicle got through before the road block was completed, and the several cars proceeded in their unmerry flight easterly toward the center of the City on Central Avenue, one of the main traffic arteries of the City. Some more shots were fired from the pursuing vehicles, with their red lights flashing and sirens sounding.
During the chase on Central Avenue a minor collision occurred which incapacitated the Madeira Beach cruiser, whereupon the St. Petersburg police cars continued the vehicular chase. At 31st Street, the pursued car turned north from Central. The police cars followed, making the turn, but somewhere during the ensuing five blocks from Central to 5th Avenue North, visual contact was apparently lost between the police cars and the suspect's car. Three St. Petersburg cruisers turned east at 5th Avenue and 31st Street, while a fourth police cruiser continued north on 31st Street, searching for the fleeing car, approximately four blocks to 31st and 9th Avenue North, at which intersection the cruiser came upon the aftermath of a serious automobile collision. The pursued suspect's car, driven, as it turned out, by one George Lee Mims, had struck the right side of a vehicle being driven by Nicholas C. Evanoff, inflicting upon him serious personal injuries. Mims was arrested, and later tried and convicted of attempted bank robbery.
Evanoff filed separate suits against the City of St. Petersburg and the City of Madeira Beach. Later, upon the issues made up in the law suits, depositions taken, etc., the trial Court, after hearing, entered summary judgments in favor of the defendant cities in both suits. The appeals have been prosecuted separately and the instant case involves the appeal of Evanoff in his suit against the City of St. Petersburg.
Evanoff contends here that the evidence before the trial Judge, the highlights of which have been hereinbefore depicted, aided by all the favorable inferences flowing therefrom, presented a factual situation sufficient to make out a jury case. We are inclined to agree.
Both sides seem to concede that the case of the Town of Mount Dora v. Bryant, Fla.App. 1961, 128 So.2d 4, is the only reported case in Florida wherein the facts are in any way similar. The Mount Dora case was consequent upon the case of Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 60 A.L.R.2d 1193, which initially, after several previous exasperating gestures, established the law in Florida that governmental municipalities are pecuniarily liable for the negligent acts of its police officers committed within the proper scope of their employment.
In Mount Dora, an auxiliary patrolman of the town, while on duty as a traffic officer at night gave chase to an automobile driven by one Gnann through the town at a high rate of speed. The patrolman gave chase but was unable to overtake Gnann within the town limits and, after signalling another patrol car for assistance, pursued Gnann along the county highways with his red blinker light on and siren sounding, while taking occasion to fire several shots into the air trying to halt the speeding car. Gnann refused to stop and the vehicular chase continued over some 16 miles of county highways, with speeds up to 100 miles per hour. Gnann was admittedly reckless during this chase, sometimes veering over into the lefthand opposite lane of the highway and sometimes blinking out his headlights, all in an attempt to elude his pursuers. During one of these "blackout periods" a truck driven by one Bryant approached *70 from the opposite direction of Gnann's car and, upon Gnann turning on his headlights suddenly, collided headon with Gnann's car, killing both drivers, Gnann and Bryant. At that time the police cruiser nearest behind Gnann's car was approximately 500 feet to the rear.
The executrix of the estate of Bryant sued the town of Mount Dora for the wrongful death of her husband under the doctrine of respondeat superior, relying upon Hargrove, supra. Both parties in Mount Dora filed Motions for Summary Judgment, and upon hearing, the Court denied the Town's motion, granted the executrix's motion and entered Summary Judgment against the town. A jury, upon a subsequent trial restricted to damages only, returned a heavy verdict in favor of the executrix and against the town, and from the judgment entered thereon the town appealed to this Court. This Court reversed, holding that the trial Judge should have denied both motions for summary judgments, because all the factual issues involved, together with the variable inferences that might arise therefrom, presented an essentially jury question.
Here, while both parties agree that the Mount Dora case is of prime consideration, approach that case in their briefs and arguments charily and with trepidation; and rightfully so, there are elements and factors in Mount Dora that can give both comfort and concern for each of the present litigants.
However, upon a careful reading of the record before us in the light of Mount Dora, Hargrove, and other authorities cited to us and also gathered from independent research, we are of the opinion here, as we were in Mount Dora, that under the facts developed, together with all the different and varying inferences of which they are susceptible, this is a case which should go to the jury for actual determination. A case in tort ordinarily presents a factual situation which should be resolved by a jury as the constitutional trier of the facts. For a more extensive discussion of the question of tort cases being generally for the jury, together with a collection of cases on the subject, see Booth v. Mary Carter Paint Company, et al., Fla.App. 1966, 182 So.2d 292.
The Final Order appealed from is thereupon reversed and the cause remanded for further proceedings not inconsistent herewith.
ALLEN, C.J., and DEKLE, HAL P., Associate Judge, concur.