226 So.2d 450 (1969)
The CITY OF TAMPA, a Municipal Corporation, Appellant,
v.
Lillie Mae DAVIS, Appellee.
No. 68-440.
District Court of Appeal of Florida. Second District.
September 17, 1969.
Rehearing Denied October 8, 1969.
*451 Lawrence I. Goodrich, Asst. City Atty., Tampa, for appellant.
Armin Smith, Jr., of Gibbons, Tucker, McEwen, Smith & Cofer, Tampa, for appellee.
McNULTY, Judge.
The City of Tampa appeals from a judgment entered upon an adverse jury verdict in a negligence action. Briefly, the series of events giving rise to this action follows. A city ordinance designated 14th Street as a "through Street" and required that favoring stop signs be maintained controlling intersecting streets, including 15th Avenue. On September 5, 1967 the stop sign at the southwest corner of the intersection of 14th Street and 15th Avenue was knocked down by a truck involved in an accident, and a police officer investigating that accident propped up the stop sign after his investigation. Some time later, and before the accident herein, the stop sign fell down again. Three days after the accident referred to above, and on September 8, the appellee was involved in the instant accident. She was riding as a passenger in a car proceeding along the favored 14th Street, and the car in which she was riding collided with a codefendant's vehicle which had proceeded into the intersection from 15th Avenue. The codefendant was unfamiliar with the intersection and did not stop in deference to appellee's right of way, the stop sign having fallen down as we've noted.
The negligence alleged against the city was its failure to properly maintain or replace the stop sign which had fallen down, and which was required to be maintained by the city's own ordinance. The jury found in favor of the codefendant but against the City of Tampa, so this appeal involves only the city and the appellee, plaintiff below.
If this case had come before us prior to the decision of our Supreme Court in Modlin v. City of Miami Beach,[1] we would probably have had little hesitation in affirming the judgment appealed from. Before Modlin, and after that court's decision in Hargrove v. Town of Cocoa Beach,[2] it was widely assumed[3] that, given an agent's negligence and proximate cause, *452 municipal liability under the doctrine of respondeat superior was established without immunity or limitation (except in those cases when the agent's negligence was committed in the performance of a legislative, quasi-legislative, judicial or quasi-judicial duty). It is now apparent that such indulgence was embarrassingly presumptuous.
We respectfully record that few precedents have caused more confusion in the cases within their scope which come before us than does Modlin. But on close analysis, in an effort to draw a straight line through the cases following Hargrove and expressly recognized by the court in Modlin so as to crystalize its discipline, we are compelled to the conclusion that the necessary net effect of Modlin is merely to limit the scope of Hargrove.
At the outset, we point out that our discussion is confined to a very narrow area of municipal tort liability. The Court in Modlin was clearly not concerned with such liability when the torts of the city's agents were committed in the performance of what was, prior to Hargrove, commonly referred to as a "proprietory function"; and it expressly confirmed municipal immunity from torts committed within legislative, quasi-legislative, judicial and quasi-judicial functions. So what we are simply talking about is that area of municipal tort liability when the tort of the municipality's agent is committed in the performance or nonperformance of an executive (or administrative) duty in carrying out a "governmental function". The distinction between a proprietory function and a governmental function is material here since clearly, the alleged negligence of the city involved the performance of a governmental function, i.e., the duty to control highway traffic;[4] and the conclusion we must now draw is different, as will be apparent, than if the city's negligence had occurred in the performance of a proprietory function.
In Modlin, the plaintiff was seeking to recover from the city because of the negligence of the city's building inspector in failing to discover a patent defect in the construction of a retail store. Some five years after construction an overhead storage mezzanine within the store collapsed due to the aforesaid defect, and tragically Mrs. Modlin, a business invitee, was crushed to death. Since municipal tort liability is predicated on the doctrine of respondeat superior, the Modlin court found it necessary first to ascertain whether the municipality's agent, individually, would have been liable to the plaintiff. The court then went on to distinguish the duties imposed on public servants in their relationship with the general public on the one hand, from those imposed in their relationship with private individuals on the other. In discussing this distinction the court held that a "public officer",[5] acting within the scope of his official duties, is not personally liable to private action unless he owes a "special duty" to the person injured different from that owed to every other member of the public generally. The case doesn't turn on remoteness or foreseeability, but rather on the class of duty owed; and it is this concept of "special duty" which has given rise to the difficulty.
In all the cases cited by the court in Modlin from Hargrove on, with which the court expressly had no difficulty reconciling its decision, we find a single relevant common denominator (except in one case which we will discuss later). This common denominator is that the tort of the city's agent in each case occurred in a direct transaction with the person injured. In other words, there is found either privity or an arms-length relationship in which the city's agent is dealing directly, in some *453 form, with the person injured; and the "special duty" spoken of arose thereunder.
In Hargrove, it will be recalled, the person injured was a city jail prisoner. As their prisoner, the city's agents owed him a "special duty" different then and there, at the time of the injury, from that owed the public generally.
In Thompson v. City of Jacksonville, supra, another case cited by the Modlin court, the plaintiff was suing for damages because of injuries suffered as a result of a negligent search of her premises. A direct transaction existed between the officers and the plaintiff to the exclusion of everyone else.
In Simpson v. City of Miami Beach;[6] Fisher v. City of Miami;[7] City of Hialeah v. Hutchins[8] and Shipp v. City of Miami,[9] each cited in Modlin, the plaintiffs' cause of action arose out of a charge of assault and battery against the city police officers. Again, a direct contact between the city's agents and the person injured was involved.
In Hewitt v. Venable, supra, also cited in Modlin, we find a case concerned with a traffic control device, as here. The city was held amenable to tort action in that case for the negligent operation of a manually controlled railroad signal. The city's agent, in operating the control device, then and there owed a duty to the plaintiff with whom he was in direct contact or liason regarding the circumstances out of which the injury arose. This situation clearly differs from one in which, for example, an automatic traffic control signal is in disrepair and the city's agent negligently repairs it,[10] or lets it stand in disrepair for a considerable length of time. In the latter case he would be breaching his duty to the public generally, as distinguished from one with whom, at the time of the negligence, he was dealing directly.
A case which arose prior to Hargrove, but which was heavily relied upon by the Modlin court to illustrate a "special and direct interest" a private individual would have in a transaction with a public officer, is First National Bank of Key West v. Filer.[11] In that case county school board members, by an ultra vires act, executed promissory notes to the plaintiff, ostensibly on behalf of the Board of Public Instruction. They were held individually liable in tort for their failure to comply with relevant statutory procedures governing the issuance of such notes. Once more we see the direct transaction, indeed privity in this case, between the tort-feasor and the injured party. It was in this case, also, that the Supreme Court recognized tort liability for nonfeasance, as well as for misfeasance or malfeasance, in the breach of a duty to an individual.
It can thus be seen that in all these cases, involving the performance or nonperformance of an executive function, the tort giving rise to municipal liability arose to some degree out of privity or out of an arms-length transaction between the city's agent and the person injured. The one case which appears incongruous with this rationale, but which nonetheless was cited by the Modlin court among the cases with which it said it had no difficulty reconciling, is our decision in Evanoff v. City of St. Petersburg, supra. In that case a city police officer was chasing a robbery suspect at high speed, and an accident occurred between the plaintiff's automobile and the suspect's automobile. In reliance *454 upon the case of Town of Mount Dora v. Bryant,[12] which in turn was bottomed on Hargrove, we reversed a summary judgment for the city. In doing so we crossed the threshold of Hargrove, and then held that there was a factual situation involving the issues of tort which should have been resolved by a jury. Ironically, while the Modlin court expressed no difficulty with Evanoff as we've noted, just twenty-three days earlier, in City of Miami v. Horne,[13] the same court[14] "explained" Evanoff by suggesting that the precise holding in that case is simply that the facts there involved, together with the inferences to which they were susceptible, should have been presented to a jury. We think this unduly dilutes the Evanoff holding; and that in truth, the full import of Evanoff is that Hargrove be given its broadest application (a common reliance at that time as we have earlier observed). The Modlin court then, in the face of its very holding therein, appears to have overlooked a patent conflict with Evanoff. But Evanoff was referred to merely by citation and was not expressly analyzed. So we are not loathe to say that we perceive no possible reconciliation between the two as they relate to the scope of the rationale in Hargrove; and to the extent that they are irreconcilable in this regard, Evanoff must stand overruled.
We conclude, therefore, that in the light of Modlin, a municipality is liable in tort, under the doctrine of respondeat superior, when its agent or employee commits a tort in the performance, or by the nonperformance, of an executive (or administrative) duty within the scope of a governmental function, only when such tort is committed against one with whom the agent or employee is in privity, or with whom he is dealing or is otherwise in contact in a direct transaction or confrontation. The duty imposed on the agent or employee by virtue of such a relationship, and from which relationship the "special and direct" interest of the private individual arises, is the "special duty" discussed in Modlin.[15] To this extent Modlin limits the holding in Hargrove; that is to say, it limits the factual circumstances on which respondeat superior may be predicated, though not its holding with respect to the concept of immunity.
We emphasize that neither Modlin nor Hargrove was concerned with such executive ministerial duties as are necessary to perform what was, prior to Hargrove, classified as a "corporate or proprietory" function.[16] Both cases dealt, as we do here, with the performance of a "governmental" function. The law governing municipal liability when acting within its corporate or proprietory capacity remains untouched by both of those cases and by this case. Furthermore, neither Modlin nor our holding here changes or affects the applicable law regarding jury questions involved in the tort itself or in causation.
Applying the foregoing principles to this case, therefore, we find that the negligence of the city's agents in this case, even if such negligence and proximate cause are conceded, did not arise out of or in the course of any direct or special transaction between the negligent agents or employees of the city and the plaintiff. There was no privity between them, nor was there any semblance of an arms-length or direct transaction out of which the accident occurred. The duty owed by the city's agents or employees, as to the plaintiff, was no different at the time of the alleged negligence than that owed to every other member of the public. In short, the duty breached was a public duty, not a *455 duty owed to the individual injured, foreseeability notwithstanding.[17]
The judgment appealed from must therefore, be, and it is hereby, reversed with directions that judgment be entered for the defendant City of Tampa and against the plaintiff.
Reversed.
HOBSON, C.J., concurs.
PIERCE, J., concurs specially.
PIERCE, Judge (concurring specially).
I see no conflict between Modlin and our former opinion in Evanoff. In fact, I see complete conformity. So did the Supreme Court in Modlin.
Judge McNulty's scholarly opinion in the instant case quite properly grounds our reversal upon the legal premise that in order to charge a City with liability for its agent's tort there must be shown "a direct contact between the city's agents and the person injured". But the opinion, in analyzing the cases supporting such premise, strays off the range irrelevantly in discussing Evanoff by holding that Evanoff did not involve a "direct contact" or a "direct transaction" between the City officer and the person injured. Just the contrary. A direct transaction was involved, and this appears from a casual reference to our Evanoff opinion.
The Supreme Court in Modlin so found such "direct contact" in Evanoff in its following language (201 So.2d text 76): "We do not have any difficulty * * * in placing on police officers a duty not to deprive those with whom they come in contact of their constitutional rights * * *; Evanoff v. City of St. Petersburg, Fla.App. 1966, 186 So.2d 68." (Emphasis supplied).
My thought here is that, although I concur in the main opinion of reversal and support the basic rationale therein expressed, I believe Evanoff is fully in line with our holding. And, as I said, apparently the Supreme Court likewise thought so in its quoted expression about Evanoff in Modlin.
NOTES
[1] (Fla. 1967), 201 So.2d 70.
[2] (Fla. 1957), 96 So.2d 130.
[3] See, e.g., Evanoff v. City of St. Petersburg (Fla.App.2d 1966), 186 So.2d 68; Thompson v. City of Jacksonville (Fla. App.1st 1961), 130 So.2d 105; and Hewitt v. Venable (Fla.App.3d 1959), 109 So.2d 185.
[4] See Holton v. City of Bartow (Fla. 1953), 68 So.2d 385.
[5] We must assume, from the context in which the court made the pronouncement, that it was talking about all agents and employees of the municipality.
[6] (Fla.App.3d 1963), 155 So.2d 829.
[7] (Fla.App.3d 1964), 160 So.2d 57.
[8] (Fla.App.3d 1964), 166 So.2d 607.
[9] (Fla.App.3d 1963), 172 So.2d 618.
[10] See, Avey v. City of West Palm Beach (1943), 152 Fla. 717, 12 So.2d 881. In that case the city was held immune because acting in its governmental capacity (the immunity concept still obtained at that time); in other respects that case is consistent with our analysis here of the Modlin case.
[11] (1933), 107 Fla. 526, 145 So. 204, 87 A.L.R. 267.
[12] (Fla.App.2d 1961), 128 So.2d 4.
[13] (Fla. 1967), 198 So.2d 10.
[14] Four of the justices participating in Modlin, excluding the author, also participated in Horne; and the author of Horne dissented (without opinion) in Modlin.
[15] See, also, our recent decision in Evett v. City of Inverness, Fla.App., 224 So.2d 247.
[16] Street maintenance, for example.
[17] See 67 C.J.S. Officers § 127b.