## King v. Sullivan

*John W. Phillips*, for plaintiffs.

*Murray B. Frazee, Jr.*, for defendants.

MacPHAIL, P. J., June 24, 1974.—This case raises the issue of whether a municipality can be sued for the alleged negligence of its employe where the employe issues a permit for an individual sewage disposal system when, in fact, it is alleged that the soil conditions do not comply with the State minimum standards. To our knowledge, this appears to be a case of first impression in Pennsylvania, particularly since the doctrine of sovereign or governmental immunity was abolished in Ayala v. Philadelphia Board of Public Education, 453 Pa. 584 (1973). We meet this issue on a preliminary objection in the nature of a demurrer filed by defendant to plaintiffs' amended complaint.

In ruling on the demurrer, we must assume that all of the well-pleaded facts in the complaint are true: Balsbaugh v. Rowland, 447 Pa. 423, 426 (1972). Briefly stated, those facts are that plaintiffs applied to the defendant-township for a permit for the installation of a private residential sewage disposal system. The application was referred by the township to defendant, Sullivan, who eventually issued the permit over his signature as "Enforcement Officer" for Franklin Township. Thereupon, plaintiffs purchased the real estate in question and installed a sewage disposal system which did not function. Plaintiffs allege that the malfunction resulted from improper percolation tests performed by Sullivan. Plaintiffs claim that their real estate cannot be used for residential purposes and that they have suffered damages in excess of $10,000 as a consequence of the negligence of both defendants.

Defendants claim that notwithstanding the decision in the Ayala case, supra, plaintiffs cannot recover

because the requirements of the Pennsylvania Sewage Facilities Act of January 24, 1966 (1965), P. L. 1535, 35 PS §750.1, et seq., are for the benefit of the municipality as a whole and not for the benefit of the landowner-plaintiffs.

Obviously, since the Ayala case, supra, the township cannot be exempted from liability solely because it is a municipal corporation. However, before the township must answer, plaintiffs' cause of action must be grounded upon some duty owed to plaintiffs as opposed to the public generally, and a breach of that duty. The duty may flow from a contractual relationship or it may be imposed by law: Malter v. South Pittsburgh Water Co., 414 Pa. 231 (1964). In the Malter case, the court found a cause of action existed in favor of plaintiffs and against the water company *and the borough* where fire hydrants failed to function during a fire at plaintiffs' home. The court there said that the allegations in the complaint, if true, would support a finding by a jury that defendants breached a duty owed to plaintiffs to use reasonable care in the operation and maintenance of a water system. It is true that the court in that case had to classify the municipality's duty to operate and maintain a water system as a "proprietary" as opposed to a "governmental" function (a distinction no longer necessary under the Ayala case, supra), but the important determination made by the court is that once the municipality installed a water system it then owed *to the individual plaintiffs* the duty of reasonable care in the maintenance of that system.

The Pennsylvania Sewage Facilities Act, supra, requires each person who intends to install an individual sewage disposal system to first obtain a permit for that purpose. The act provides that the application for the permit shall be made to the

*municipality.* The permit, if issued, indicates that the site and the plan and specifications for the system are in compliance with the provisions of the act and the standards adopted pursuant to the act. The municipality is empowered to make, or cause to be made, such inspections and tests as may be necessary to carry out the provisions of the act. If a municipality fails to administer the provisions of the act in accordance with the standards of the Pennsylvania Department of Health and allows conditions inimical to the public health to occur, the act provides that the Pennsylvania Department of Health may take over the functions of the municipality. It is further provided that no municipality may voluntarily surrender its responsibility under the act to the Pennsylvania Department of Health.

From the allegations in the complaint, we may safely assume that Franklin Township undertook to assume its responsibilities under the act. It employed Sullivan to perform the necessary inspections and tests. A permit on a form provided by the Pennsylvania Department of Health was issued to plaintiffs. That permit was signed by Sullivan and by the township. In reliance upon that permit, plaintiffs acted and allegedly suffered damages.

Defendants call our attention to Fiduccia v. Summit Hill Construction Co. and Borough of Roseland, 109 N. J. Super. 249, 262 A.2d 920 (1970). At the time that case was decided, governmental immunity had been abolished in New Jersey. The defendant-construction company built a home for plaintiffs. The borough issued a "certificate of occupancy." Plaintiffs complained that the house was improperly graded and constructed and brought their suit against the construction company and the borough. The New Jersey Superior Court held that the borough was immune

from such suits because: (a) the issuance of the certificate requires the exercise of discretion on the part of the building inspector, and a municipality should not be exposed to the possibility of tort liability by reason of the exercise of poor judgment by the building inspector; (b) the certificate is merely a testimonial that the property is being used in compliance with applicable ordinances and is for the protection of the public and not the benefit of the landowner, and (c) there was nothing in the applicable statute to indicate that the municipality assumed the obligation of protecting the landowner against the failure of a contractor to perform properly. A similar case in Minnesota reached the same result: Hoffert v. Owatonna Inn Towne Motel, Inc., 293 Minn. 220, 199 N.W.2d 158 (1972). Defendants contend that the permit issued in the present case is similar to the certificate of occupancy in those cases and that, since the permit is issued for the protection of the public, there should be no liability imposed on defendants.

However, in other jurisdictions where the municipality, through its agent, is in a direct transaction with, or is in privity with, plaintiffs, a different result occurs notwithstanding the "public interest" concept. Thus, in Tampa v. Davis, 226 So.2d 450 (1969), the court noted that in Florida, where an agent had a direct transaction with, or was in privity with, the complainant, the municipality was liable for the agent's actions. In City of Louisville v. Louisville Seed Co., 433 S.W.2d 638 (1968), the court said that where a municipality seeks out or separates an individual from the general public, it should then be subjected to the same tort liability as generally applies between individuals. In Sexstone v. City of Rochester, 301 N. Y. Supp. 2d 887 (1969), the Supreme Court of New York, Appellate Division, held that the issuance of a

certificate of occupancy for a building with violations would render the city liable for negligently issuing the certificate. The court said, at page 883: "Since there was a duty to issue the certificate in a careful manner with knowledge that the plaintiffs would rely thereon, the city should be liable for the negligent issuance, if such was the case."

From those cases, there emerges a rule of law which seems to be based on sound reason and logic and which should be applicable here. Where the municipality deals directly with the individual citizen and the risk of harm to the individual for the negligent performance of a duty owed by the municipality to the individual citizen (whether imposed by statute or contract) is foreseeable, the municipality is then liable for the tortious conduct of its agents. Certainly, defendants here can make out a strong argument that the Pennsylvania Sewage Facilities Act is for the benefit of the public at large. However, where, as here, the individual citizen *also* deals directly with the "Enforcement Officer," and in reliance upon a permit issued over his signature and the signature of the municipality acts to his detriment, a cause of action must also lie against the municipality. The test is whether the relationship to the individual is primary and immediate or secondary and incidental: Palsgraf v. Long Island R. Co., 248 N. Y. 339, 162 N.E. 99 (1928). In the case now before us, we feel that the parties seeking the permit are the persons primarily concerned with the result of the testing and will be harmed or benefited according to the manner in which the testing is done. The public benefit and protection follows *thereafter*.

It is true that this holding casts a heavy burden upon municipalities, but we quote from Justice Robert's opinion in the Ayala case, supra, at page 882:

" ' "It is fundamental to our common law system that one may seek redress for every substantial wrong. 'The best statement of the rule is that a wrongdoer is responsible for the natural and proximate consequences of his misconduct. . . .' " ' 'As we have stated many times before, today cities and states are active and virile creatures capable of inflicting great harm, and their civil liability should be co-extensive. Even though a governmental entity does not profit from its projects, the tax-paying public nevertheless does, and it is the taxpaying public which should pay for governmental maladministration. If the city operates or maintains injury-inducing activities or conditions, the harm thus caused should be viewed as a part of the normal and proper costs of public administration and not as a diversion of public funds. The city is a far better loss-distributing agency than the innocent and injured victim. See 2 Harper and James, Torts, 662 (1956).' "

In arriving at our conclusion on this issue, we are mindful that this may be an extension of risk never before imposed upon municipalities in the Commonwealth. However, we feel that the time has come, especially since the advent of the Ayala case, supra, that a governmental municipality must be as fully responsible as private enterprise where tortious conduct is involved. In McDade v. City of Chester, 117 Pa. 414 (1888), at page 423, the Supreme Court of Pennsylvania said: "When a legal duty has been imposed by statute upon a municipal corporation, it is undoubtedly liable for injuries resulting from the neglect of that duty; in such case it stands on the same footing in respect to negligence as a purely private corporation or an individual."

Another issue raised by the preliminary objections in this case is that the complaint fails to state in so

many words that the damages allegedly suffered by plaintiffs was caused by defendant, Sullivan. Paragraph 17 of the complaint sets forth the negligence of Sullivan in detail; the caption of the complaint and of count 1 in the complaint name Sullivan as a defendant; and the claim for relief seeks damages from both defendants. We are of the opinion that the objection is technical rather than real and hold that the complaint does state a cause of action against Sullivan.

For the above reasons, we enter the following order:

## ORDER OF COURT

And now, June 24, 1974, the preliminary objections are overruled. Defendants shall have twenty days in which to file a responsive pleading.