[No. 19757-6-I.  Division One.  August 31, 1987.]

STANLEY B. TOMBS, ET AL, *Appellants,* v. KING COUNTY, ET AL, *Respondents.*

*Ross Radley*, for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Ann Schindler, Deputy*, for respondents.

CALLOW, J.*—This case presents the issue of whether the King County Executive has the authority to veto a rezoning ordinance passed by the King County Council. We hold that the executive does not have such authority.

In October 1983, Bob Oldwright and Stanley Tombs, as Questar Industries, Inc., et al, applied to the King County Division of Building and Land Development (BALD) for zoning reclassification of two parcels of property from RS 7200 (single family residential, allowing 4 to 6 units per acre) to RM 2400 (medium density dwelling, allowing 7 to

---

*This appeal was heard by a Court of Appeals Judge, together with a Supreme Court Justice and a Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

18 units per acre), in order to build a 90-unit apartment complex on the property. BALD reviewed Questar's application and submitted a report to the zoning and subdivision examiner recommending that the rezone request on parcel 1, owned by Oldwright, be approved and the rezone request on parcel 2, owned by Tombs, be denied.

In February 1984, the zoning and subdivision examiner held a hearing pursuant to King County Code 20.24.070 to consider the rezone requests. The hearing examiner determined that both parcels should be rezoned RM 2400 as requested. Neighbors in the south Angle Lake area appealed the hearing examiner's decision to the King County Council pursuant to King County Code 20.24.210. The neighbors argued that the rezone would conflict with the Highline Community Plan and subsequent area zoning, and that a community plan study was required prior to consideration of the rezone request.

On July 16, 1984, the King County Council held a hearing on the appeal. The Council passed ordinance 6865, approving the rezone of parcel 2, which is the subject of this action, but denying the rezone request on parcel 1. Parcel 1 is not a subject of the present action.

On July 23, 1984, ordinance 6865 was presented to King County Executive Randy Revelle. On August 1, 1985, Revelle partially vetoed the ordinance inasmuch as it granted a rezone of parcel 2. The King County Council did not override the veto.

On October 12, 1984, the Tombs filed suit in King County Superior Court questioning Executive Revelle's authority to veto ordinance 6865. On September 27, 1985, the Tombs amended their complaint to add a claim for damages.

On May 19, 1986, on cross motions for summary judgment the King County Superior Court held that Executive Revelle's veto of ordinance 6865 did not violate the King County Code, the King County Charter, or either the state or federal constitutions. The court did hold, however, that the veto violated the appearance of fairness doctrine, and

for that reason remanded the ordinance for reconsideration. On remand, King County Executive Tim Hill, successor in that post to Randy Revelle, vetoed the ordinance.

On June 17, 1986, the Tombs appealed and the case came before this court for determination.

Meanwhile, in separate actions the Tombs appealed the veto of ordinance 6865 by Executive Hill, and the South Angle Lake Neighbors appealed the King County Council's override of Executive Hill's veto. On December 19, 1986, the Superior Court granted King County's motion to stay both of these actions pending resolution of the present appeal.

I

A preliminary issue presented is whether this appeal should be dismissed as moot since the Tombs have been granted the rezone as requested. We find that such a dismissal would be improper. Although the rezone has been granted, the Tombs' claim for damages for delay caused by the veto is not resolved by the rezone, therefore the action is not moot.

II

The central issue is whether the King County Executive has the authority to veto an ordinance passed by the King County Council approving a request to rezone specific property. We find that the King County Executive has no authority to veto zoning reclassification ordinances.

The King County Code (KCC) specifically outlines the procedure by which zoning reclassifications are to be requested, approved or denied, and appealed.

In section 20.24.020, KCC creates the office of zoning and subdivision examiner:

> 20.24.020 Office created. The office of zoning and subdivision examiner is created. The examiner shall act in behalf of the council in considering and applying regulatory enactments to the land as provided herein. (Ord. 263 Art. 5 § 2, 1969).

KCC 20.24.030–.050 set forth provisions for the appoint-

ment, removal, and qualifications of the examiner.

Authority for the examiner to hear rezone requests and to make recommendations regarding disposition thereof is granted in KCC 20.24.070:

20.24.070 Recommendations to the council. A. The examiner shall receive and examine available information, conduct public hearings and prepare records and reports thereof and issue recommendations to the council based upon findings and conclusions in the following cases:

1. Applications for reclassifications of property;

. . .

B. The examiner's recommendation may be to grant or deny the application or appeal, or the examiner may recommend that the council adopt the application or appeal with such conditions, modifications and restrictions as the examiner finds necessary to make the application reasonably compatible with the environment and carry out applicable state laws and regulations and the regulations, policies, objectives and goals of the comprehensive plan, the community plans, the sewerage general plan, the zoning code, the subdivision code and other official laws, policies and objectives of King County. (Ord. 6949 § 16, 1984: Ord. 6465 § 13, 1983: Ord. 4461 § 1, 1979).

When an application for zoning reclassification is received by the examiner, a public hearing must be scheduled pursuant to KCC 20.24.130:

20.24.130 Public hearing. When it is found that an application meets the filing requirements of the responsible county department or an appeal meets the filing rules of the examiner, it shall be accepted and a date assigned for public hearing. For purposes of proceedings identified in Section 20.24.070, the public hearing by the examiner shall constitute the hearing by the council. Before rendering a recommendation or decision on any application or appeal, the examiner shall hold at least one public hearing thereon; provided, that the examiner's review of appeals regarding variances and conditional use permits shall be based upon the record before zoning adjustor as provided by Section 21.58.070. (Ord. 4461 § 4, 1979).

Prior to the public hearing, KCC 20.24.150 requires the

responsible county department to prepare a report and departmental findings, and to make a recommendation to the examiner. KCC 20.24.160 requires that notice of the scheduled hearing be given to all persons of record at least 14 days before the hearing. After the hearing, KCC 20.24-.180–.190 requires the examiner to enter findings and conclusions to support his decision or recommendation.

KCC 20.24.210(B) and 20.24.220 provide for appeal of the examiner's decision or recommendation to the King County Council:

B. Recommendations of the examiner in cases identified in Section 20.24.070 may be appealed to the council by an aggrieved party by filing a notice of appeal with the clerk of the council within fourteen calendar days of the date the examiner's written recommendation is mailed. A copy of the notice shall also be delivered to the examiner. If no appeal is filed within fourteen calendar days, the clerk of the council shall place a proposed ordinance which implements the examiner's recommended action on the agenda of the next available council meeting for adoption; provided, the council by motion may refer the matter to a council committee or remand to the examiner for the purpose of further hearing, receipt of additional information or further consideration when determined necessary prior to the council's taking final action thereon.

20.24.220 Appeal to council. If an appeal has been filed pursuant to Section 20.24.210 B, the appellant shall file within twenty–one calendar days of the date of the examiner's written recommendation a written appeal statement specifying the basis for the appeal and any arguments in support of the appeal. If no written appeal statement or arguments are filed within the twenty–one calendar days, the clerk of the council shall place a proposed ordinance which implements the examiner's recommended action on the agenda of the next available council meeting. The clerk of the council shall cause notice to be given to other parties of record that a notice of appeal and appeal statement have been filed and that written appeal statements or arguments in response thereto may be submitted to the clerk within fourteen calendar days of the date of such notification by the

clerk.

Consideration by the council of the appeal shall be based upon the record as presented to the examiner at the public hearing and upon written appeal statements based upon the record; provided, the council also may allow parties a period of time for oral argument based on the record. The examiner may conduct a conference with all parties to the appeal for the purpose of clarifying or attempting to resolve certain issues on appeal, provided, that the deputy examiner who conducted the public hearing on the proposal may not conduct the conference. Such conference shall be informal and shall not be part of the public record.

If, after consideration of the record, written appeal statements and any oral argument the council determines that:

A. An error in fact or procedure may exist or additional information or clarification is desired, the council shall remand the matter to the examiner; or

B. The recommendation of the examiner is based on an error in judgment or conclusion, the council may modify or reverse the recommendation of the examiner; provided, the council's land use appeal committee may retain the matter, refer it to another council committee or remand to the examiner for the purpose of further hearing, receipt of additional information or further consideration when determined necessary prior to the council's taking final action thereon (Ord. 4461 § 12, 1979).

(Footnote omitted.)

Upon receipt of the examiner's recommendation, the King County Council must take what KCC 20.24.230 terms "final action":

20.24.230 Council action. The council shall take *final action* on any recommendation of the examiner by ordinance and when so doing, it shall make and enter findings of fact and conclusions from the record which support its action. Said findings and conclusions shall set forth and demonstrate the manner in which the action is consistent with, carries out and helps implement applicable state laws and regulations and the regulations, policies, objectives and goals of the comprehensive plan, the community plans, the sewerage general plan, the zoning code, the subdivision code and other official laws, policies

and objectives for the development of King County. The council may adopt as its own all or portions of the examiner's findings and conclusions.

(Italics ours.)

The Council's action becomes "final" unless the matter is taken before the King County Superior Court on a writ of certiorari:

20.24.240 Review final decisions. A. Decisions of the council in cases identified in Section 20.24.070 shall be final and conclusive action unless within twenty calendar days, or within thirty calendar days for decisions approving or denying plats, from the date of the council's adoption of an ordinance an aggrieved person applies for a writ of certiorari from the Superior Court in and for the county of King, state of Washington, for the purpose of review of the action taken; provided, no development or related action may occur during said twenty–day, or thirty–day for plat approvals, appeal period.

The administrative interpretation of the King County Council's decisions as final is also reflected in the hearing examiner's decision, which advised the parties that:

the action of the council approving or adopting recommendations of the examiner shall be final and conclusive unless within twenty (20) days from the date of the action the aggrieved party or person applies for a writ of certiorari from the Superior Court in and for the County of King, State of Washington, for the purpose of review of the action taken.

Hearing Examiner's Decision, at 6 (Mar. 9, 1984).

To support its contention that the King County Council's decision is not final, but subject to review by the King County Executive, the County points to the general language of the King County Charter, which states:

230.20 Executive Veto.

Except as otherwise provided in this charter, the county executive shall have the right to veto any ordinance or any object of expense of an appropriation ordinance. Every ordinance shall be presented to the county executive within five days after its adoption or enactment by the county council. Within ten days after its presentation, the county executive shall either sign the ordi-

nance and return it to the county council, veto the ordinance and return it to the county council with a written and signed statement of the reasons for his veto or sign and partially veto an appropriation ordinance and return it to the county council with a written and signed statement of the reasons for his partial veto. If an ordinance is not returned by the county executive within ten days after its presentation it shall be deemed enacted without his signature. Within thirty days after an ordinance has been vetoed and returned or partially vetoed and returned, the county council may override the veto or [partial] veto by enacting the ordinance by a minimum of six affirmative votes.

We do not find the County's position persuasive for several reasons. First, the King County Code sets forth detailed procedures for zoning reclassification. We find it unlikely that a step in the procedure as significant as an executive review and potential veto would have been left out of the scheme by mere inadvertence. It is apparent that the drafters of the King County Code did not intend to allow for an executive review of zoning reclassification decisions.

This conclusion is supported by the fact that the timing of executive review and veto procedures as set forth in the King County Charter is incompatible with the timing of the King County Code zoning reclassification and review procedures. Under the King County Code, once the King County Council has made its final decision, any party to the action may appeal the decision to the King County Superior Court within 20 days. KCC 20.24.240. If, as the County asserts, decisions of the Council must be given to the King County Executive within 5 days, and vetoed or approved within 10 as set forth in King County Charter 230.20, it would be possible for the decision to be pending before both the court and the executive at the same time. The Charter and the Code should be construed in such a way that they achieve an orderly procedure and are compatible with each other. They should not be construed in a manner that will result in chaos or bring about conflicts in

the system.

In addition, the very nature of a zoning reclassification decision, as historically interpreted by Washington courts, is inconsistent with the notion of an executive veto. Washington courts have found rezoning decisions to be quasi–judicial in nature and to therefore require extra safeguards to ensure not only that the proceedings and decision are fair, but that they appear to be fair as well.

> Perforce, by the very nature of our society, the initial imposition of zoning restrictions or the subsequent modification of adopted regulations compels the highest public confidence in the governmental processes bringing about such action. Circumstances or occurrences arising in the course of such processes which, by their appearance, tend to undermine and dissipate confidence in the exercise of the zoning power, however innocent they might otherwise be, must be scrutinized with care and with the view that the evil sought to be remedied lies not only in the elimination of actual bias, prejudice, improper influence or favoritism, but also in the curbing of conditions which, by their very existence, tend to create suspicion, generate misinterpretation, and cast a pall of partiality, impropriety, conflict of interest or prejudgment over the proceedings to which they relate.

*Chrobuck v. Snohomish Cy.*, 78 Wn.2d 858, 868, 480 P.2d 489 (1971). The appearance of fairness doctrine applies not only to the procedures employed in conducting hearings regarding zoning reclassifications, but also requires that the persons making those decisions be impartial and free from undue influence. *See, e.g., Fleming v. Tacoma,* 81 Wn.2d 292, 299, 502 P.2d 327 (1972).

As the trial court properly held, if a county executive is to be involved with determining whether specific parcels of property are to be rezoned, the executive is subject to the appearance of fairness doctrine. This creates a potential for insoluble problems if the executive has personal or business ties to the parties to a zoning dispute or could appear to benefit from a particular resolution of the dispute. Zoning reclassifications have been overturned because a member of the decisionmaking body owned land near the property

rezoned, *Buell v. Bremerton,* 80 Wn.2d 518, 525, 495 P.2d 1358 (1972); held stock in a corporation which had an interest in the land in question, *Swift v. Island Cy.,* 87 Wn.2d 348, 552 P.2d 175 (1976); was employed by the applicant for rezoning soon after the hearing, *Fleming;* was employed by an entity which would benefit from the decision, *Narrowsview Preserv. Ass'n v. Tacoma,* 84 Wn.2d 416, 526 P.2d 897 (1974); or was associated with an organization that supported one of the parties to the rezone dispute, *Save a Valuable Env't v. Bothell,* 89 Wn.2d 862, 576 P.2d 401 (1978). There are any number of situations in which a county executive could have the same or similar interests in the outcome of a zoning reclassification decision, and therefore necessarily would be disqualified from reviewing the decision of the County Council. There being only one King County Executive at any given time, if the executive were disqualified for appearance of fairness reasons, there would be no one qualified to review the decision of the Council. Therefore, according to the County's position on this issue, rezoning decisions of the King County Council are subject to executive veto in those cases in which the executive has no conflict of interest, but the veto power necessarily disappears if a conflict exists. Such a system would be absurd and unworkable.

Finally, regardless of the interest or impartiality of the executive in a particular case, we consider the process by which an executive reviews decisions to be improper in a zoning reclassification context. By the very nature of the position, the office of King County Executive is political and exposed constantly to opinions and pressures from various constituents. The office of Executive is a political and not a judicial office. It is not possible to insulate an executive from ex parte contacts regarding rezoning decisions. Even if an executive were to refrain from ex parte contacts, a decision to veto or approve a zoning reclassification occurs outside of the public view. No record is kept of materials reviewed or outside information on which an executive might rely in making his decisions. The possibili-

ties of secretive decisionmaking gives rise to an appearance of unfairness.

We find no foundation for any belief that an executive review and veto of zoning reclassification decisions was contemplated by the drafters of the King County Code. Such review and veto is incompatible both with the zoning reclassification system as set forth in the King County Code and with the appearance of fairness doctrine. We hold that the King County Executive lacks the authority to veto zoning reclassification decisions.

### III

The Tombs claim damages for the delay resulting from Executive Revelle's veto of the King County Council's decision to rezone their property. They base their claim on a theory of "special relationship." We hold that no special relationship existed between King County and the rezoning applicants and deny the Tombs' request for damages.

The special relationship theory has been the basis for granting damages to individuals in situations where a local governmental body failed to fulfill a specific duty owed to particular plaintiffs. *Chambers–Castanes v. King Cy.*, 100 Wn.2d 275, 669 P.2d 451, 39 A.L.R.4th 671 (1983); *J & B Dev. Co. v. King Cy.*, 100 Wn.2d 299, 669 P.2d 468, 40 A.L.R.4th 86 (1983).

In *Chambers–Castanes* the plaintiffs were assaulted at a downtown intersection in Woodinville. The King County Police Department was notified by Ms. Chambers–Castanes and others who placed a total of 11 telephone calls to the Department while the assault was in progress. Despite the Department's repeated assurances that a patrol car had been dispatched and would arrive shortly, the patrol car was recalled by the Department and no police officers ever arrived to assist Mr. Chambers–Castanes in protecting himself from the assailants. The court found that the Department owed a specific duty to provide police protection to the Chambers–Castanes. The *Chambers–Castanes* court stated that a special relationship exists between a

government agency (in that case, a county police department) and an individual only where:

(1) there is some form of privity between the police department and the victim that sets the victim apart from the general public (*Tampa v. Davis,* 226 So. 2d 450, 454 (Fla. Dist. Ct. App. 1969)), and (2) there are explicit assurances of protection that give rise to reliance on the part of the victim (*Sapp v. Tallahassee,* 348 So. 2d 363, 365–66 (Fla. Dist. Ct. App. 1977)). *Warren v. District of Columbia,* 444 A.2d 1, 10 (D.C. 1981) (Kelly, J., concurring in part and dissenting in part).

The term privity is used in the broad sense of the word and refers to the relationship between the police department and any "reasonably foreseeable plaintiff". *See Warren v. District of Columbia, supra* at 10. *See generally Halvorson v. Dahl,* 89 Wn.2d 673, 676–77, 574 P.2d 1190 (1978). As to the second element, the assurances need not always be specifically averred, as some relationships carry the implicit character of assurance.

(Footnotes omitted.) *Chambers–Castanes,* at 286.

In *J & B Dev. Co.,* the plaintiff obtained a building permit from King County and proceeded to excavate and level the property and set forms for the foundation of a building. The forms were inspected and approved. The plaintiff then poured the foundation, constructed a subfloor and started to construct the building frame. At this point, neighbors complained to the County, with the result that the County determined that the building violated a provision of the King County Code and a stop work order was posted by the County. The opinion determined that the plaintiff was entitled to rely upon the County's building permit and inspections, and therefore had a cause of action against the County for damages caused by breach of the County's duty to exercise reasonable care in issuing the building permit and inspecting the construction in progress to ensure compliance with the King County Code.

The 2–part *Chambers–Castanes* test is met under the facts of *J & B Dev. Co.* The issuance of a building permit established the necessary privity between the developer and the County. With respect to the requirement of "explicit

assurances of protection", the issuance of a building permit and approval of work after inspection is pinpoint illustrative of governmental actions which carry with them "the implicit character of assurance", such that the developer was entitled to rely upon them.

Here we find that privity did exist between the Tombs and King County by virtue of the application for zoning reclassification. However, the County gave no explicit or implied assurances of protection from the harm which followed from the delay of the rezone by a good faith attempt to veto the reclassification ordinance. The County had a duty to follow certain procedures considering the Tombs' application for rezoning. The County fulfilled this duty. The County did not have a duty to resolve issues raised by the rezoning dispute within the length of time the Tombs might have desired. Therefore, although the delay of the zoning reclassification may have been inconvenient for the plaintiffs, it does not give rise to a cause of action for damages.

In addition, when ordinance 6865 was passed by the King County Council, the plaintiffs had no right to immediately rely on it. Although the decision of the King County Council was the "final" action of the legislative branch of government, the King County Code clearly states that the decision could be appealed to the King County Superior Court. Therefore, the Tombs were aware that the ordinance was subject to review until after the deadline for appeal to the court had passed. Indeed, they do not claim to have detrimentally relied on the Council's decision. Without such reliance, the Tombs fail to establish a claim under the special relationship theory.

We have determined that the Tombs are not entitled to damages under a special relationship theory, and therefore need not reach the issue of whether a claim for damages would also be barred by a defense of sovereign immunity.

IV

We hold that the King County Executive has no author-

ity to veto ordinances of the King County Council by which zoning reclassifications are granted or denied. However, the plaintiffs are not entitled to damages for delay caused by an erroneous attempt to veto a zoning reclassification ordinance.

WEBSTER, J., and STEWART, J. Pro Tem., concur.