**Rudolf J. GERNETH and Henrica J. C. Gerneth, Plaintiffs-Appellants,**

v.

**The CITY OF DETROIT, a Municipal Corporation, Defendant-Appellee.**

**No. 72-1165.**

United States Court of Appeals, Sixth Circuit.

Aug. 17, 1972.

Leonard Natinsky, Sugar, Schwartz, Silver, Schwartz & Tyler, Detroit, Mich. (Stanley S. Schwartz, Detroit, Mich., on the brief), for appellants.

Michael M. Glusac, William P. Doran, Thomas H. Gallagher, Detroit, Mich. for City of Detroit.

Before PHILLIPS, Chief Judge, and CELEBREZZE and KENT, Circuit Judges.

KENT, Circuit Judge.

This is an action in which jurisdiction is based upon diversity of citizenship, each of the plaintiffs being a citizen of a foreign country. The suit is for damages because of serious personal injuries sustained by plaintiff, Rudolf J. Ger-

neth, on November 1, 1969, when he was shot by Willie Wilder, a private patrolman employed by Williams Private Patrol as a guard at the Greyhound Bus station in Detroit, Michigan.

In accordance with the ordinances of the City of Detroit Willie Wilder's name had been submitted to the Detroit Police Department for an investigation and licensing before employment. The ordinance makes provision for denial of a license if the applicant has been previously adjudged insane or convicted of a felony.[1] The same ordinance provides that it shall not be applicable to persons "engaged in the business of protecting persons, passengers and property being transported in interstate or intrastate commerce within the city by common carrier and the protection of the property of such common carrier within the city." (C.O.1954, Ch. 47, § 47–1–1).

Investigation by the city upon application by Williams Private Patrol for a license for Willie Wilder failed to reveal the fact that Wilder had been convicted in 1963 of the felony, "careless use of firearms." Plaintiffs claim that had the city not undertaken to provide licensing after investigation Williams Private Patrol would have made its own investigation, but did not do so because of reliance upon the city's investigation.

On motion the District Judge dismissed the complaint on the ground that the undertaking by the city to license private patrolmen did not create any obligation or duty to private persons, the violation of which would justify an action for damages for failure to perform

the duty properly. The trial court relied upon the opinion of Mr. Justice (then Judge) Cardozo in H. R. Moch Co. v. Rensselaer Water Co., 247 N.Y. 160, 159 N.E. 896 (Court of Appeals, 1928). While *Moch* was not a suit against a municipal corporation the language of Mr. Justice Cardozo is enlightening. Rensselaer Water Company had contracted with the city to supply its water requirements. It was claimed that the company had negligently failed to supply adequate water during a fire which destroyed plaintiff's building. Speaking for the Court Mr. Justice Cardozo said:

"An intention to assume an obligation of indefinite extension to every member of the public is seen to be the more improbable when we recall the crushing burden that the obligation would impose. * * * The consequences invited would bear no reasonable proportion to those attached by law to defaults not greatly different." 159 N.E., at 897, 898.

A diligent search has revealed no Michigan decision which considers the issues raised in this case. Until 1961 municipal corporations in Michigan were immune from tort liability. This immunity was abolished in Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1 (1961). By Act No. 170 of the Public Acts of 1964 the Michigan Legislature exempted municipal corporations from tort liability except for certain narrow specific exceptions. This Act was held unconstitutional as being broader than the title of the Act, Maki v. City of East Tawas, 385 Mich. 151, 188 N.W.2d 593

---

1. Sec. 47–1–4.  Same—Qualifications of applicants.

    No person shall be licensed as a private patrol watchman within the city unless he is twenty-one years of age or over, a citizen of the United States and has resided within the State for a period of not less than six months immediately preceding such application. Applicants must be physically and mentally sound. Each applicant must be able to read and write the English language. No such license shall be issued to a person who has been adjudged insane in this state or elsewhere or who has been convicted of a felony during the ten year period immediately preceding the date of such application. The ten year period shall be computed after completion of sentence, parole or probation. The commissioner of police shall cause an investigation to be made of the character of the applicant and he shall refuse to recommend the issuance of a license, unless as a result of such investigation, the character of the applicant is found to be satisfactory. (C.O.1954, ch. 432, § 4; Ord. No. 198–G, § 1; Ord. No. 278–G, § 1).

(1971). The legislature acted promptly by expanding the title of the Act rather than by limiting the immunity of municipal corporations in Michigan, Act No. 155, Public Acts of 1970, M.S.A. § 3.-996(107), M.C.L.A. § 691.1407.[2] The Michigan Supreme Court has not had occasion to discuss the tort liability of municipal corporations since the enactment of Act No. 155. The issue has been presented to the courts of other states.

Municipal corporation immunity was abolished in Florida in 1957. Certain limitations on the extent of liability are delineated in City of Tampa v. Davis, 226 So.2d 450 (1969). In discussing the liability of the City of Tampa for negligently failing to replace a stop sign at an intersection where the plaintiff was subsequently injured in a collision, allegedly because of the sign's absence, the Florida Court of Appeals said the following:

"So what we are simply talking about is that area of municipal tort liability when the tort of the municipality's agent is committed in the performance or nonperformance of an executive (or administrative) duty in carrying out a 'governmental function.'" 226 So.2d, at 452.

"We conclude, therefore that * * * a municipality is liable in tort, under the doctrine of respondeat superior, when its agent or employee commits a tort in the performance, or by the nonperformance, of an executive (or administrative) duty within the scope of a governmental function, *only when such tort is committed against one with whom the agent or employee is in privity, or with whom he is dealing or is otherwise in contact in a direct transaction or confrontation.*" 226 So. 2d, at 454 (Emphasis original).

"The duty owed by the city's agents or employees, as to the plaintiff, was no different at the time of the alleged negligence than that owed to every other member of the public. In short, the duty breached was a public duty, not a duty owed to the individual injured, foreseeability notwithstanding." 226 So.2d, at 454–455.

The same standard was applied by the Florida Court of Appeals in Town of Largo v. L & S Bait Co. of Florida, Inc., 256 So.2d 412 (1972), where the Court held that the Town of Largo could not be held liable for damages caused by negligently causing a sewer to back up on to plaintiff's property. A similar conclusion has been reached under other circumstances in Whitney v. City of New York, 27 A.D.2d 528, 275 N.Y.S.2d 783 (1st, 1966). A wife sued the City of New York for negligently failing to inspect a boiler as required by city ordinance. The boiler later exploded killing her husband. In rejecting the plaintiff's theory of liability for damages the Appellate Division said:

". . . plaintiff seeks to impose liability on the City, merely because the City failed to carry out a statutory function. Unless it can be said that the statute was enacted for the benefit of an individual, no liability may be imposed for failure to carry out the statutory function. * * * . . . mere failure to perform a statutory government function, does not alone lead to liability in tort." 275 N.Y.S.2d, 784–785.

See also Simpson's Food Fair, Inc. v. City of Evansville, 272 N.E.2d 871 (Indiana Court of Appeals, 1971); Massengill v. Yuma County, 104 Ariz. 518, 456 P.2d 376 (1969), noted in Rose v. Mackie, 22 Mich.App. 463, 177 N.W.2d 633 (1970).

2. § 3.996(107) Governmental function; immunity from tort liability; immunity of state.] Sec. 7. Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed.

The rule relating to responsibility for such alleged negligence has been summarized in 2 Cooley, Torts (4th Ed. 1932), § 300, p. 385, as follows:

"The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be redressed, if at all, in some form of public prosecution."

Quoted in Leger v. Kelley, 142 Conn. 585, 116 A.2d 429, at 432 (1955); People of State of Illinois, for Use of Trust Co. of Chicago v. Maryland Casualty Co., 132 F.2d 850, 852, 853, (7th Cir. 1942), and Massengill v. Yuma County, 104 Ariz. 518, 456 P.2d 376, 379 (Ariz.1969).

The Court in *Leger* laid down an additional test to be utilized in determining when the breach of a duty by a public officer provides a basis for a tort action.

"If the duty imposed upon the public official by the statute is of such a nature that the performance of it will affect an individual in a manner different in kind from the way it affects the public at large, the statute is one that imposes upon the official a duty to the individual, and if the official is negligent in the performance of that duty he is liable to the individual."

The only Michigan cases which discuss the issue before this Court appear to be inapplicable. Raynsford v. Phelps, 43 Mich. 342, 5 N.W. 403 (1880); People for use of Lapeer County Bank v. O'Connell, 214 Mich. 410, 183 N.W. 195 (1921).

It appears to this Court that the imposition of a duty to one in the position of plaintiff, Rudolf J. Gerneth, and a resulting liability for damages for breach of such duty would impose an undue burden upon municipal corporations, and might in fact substantially interfere with the licensing and investigatory functions of such municipal corporations. It appears to us that as a matter of public policy, absent a statement to the contrary by the legislature or the highest court of the jurisdiction involved, the imposition of liability for damages for breach of such a claimed duty would be inappropriate under the circumstances of a case such as this. There is no basis for a conclusion that the Detroit City Council, in enacting the ordinance in question (paraphrasing the language of Mr. Justice Cardozo), "intended to assume an obligation of indefinite extension to every member of the public . . . and the crushing burden which such obligation might impose."

Judgment affirmed.