WALKOWSKI v MACOMB COUNTY SHERIFF

1. STATES—GOVERNMENTAL IMMUNITY—TORTS—ARREST—UNLAWFUL
   ARREST—STATE POLICE—GOVERNMENTAL FUNCTION—STATUTES.

   A governmental immunity statute which grants immunity from
   suit to a state agency engaged in a governmental function
   applies to a suit against the Michigan State Police Department
   for battery, assault, false arrest, unlawful imprisonment and
   defamation because of allegedly false information concerning
   an outstanding bench warrant for contempt supplied by a
   computerized state police filing system (MCLA 691.1407).

2. STATES—GOVERNMENTAL IMMUNITY—TORTS—PUBLIC OFFICIALS—
   DISCRETIONARY ACTS.

   No tort action will lie against a state officer for any act done by
   him in the exercise of his discretionary functions provided that
   the act, although done mistakenly, was within the scope of his
   jurisdiction.

3. TORTS—GOVERNMENTAL IMMUNITY—PUBLIC OFFICIALS—MINISTE-
   RIAL ACTS—DISCRETIONARY ACTS—SCOPE OF AUTHORITY—MAL-
   ICE.

   Governmental officials are liable for the negligent performance of
   their ministerial duties, but are not liable for their discretion-
   ary acts within the scope of their authority, even if it is alleged
   that they acted maliciously.

4. STATES—GOVERNMENTAL IMMUNITY—STATE POLICE DIRECTOR—
   TORTS—COMPUTERIZED FILING SYSTEM—DISCRETIONARY ACTS.

   The director of the state police is immune from suit for torts
   relating to unlawful arrest arising out of allegedly false infor-
   mation from a state police computerized filing system of out-
   standing arrest warrants because the director exercises discre-
   tionary control over the system and, thus, is protected by the
   doctrine of governmental immunity.

Appeal from Macomb, Walter P. Cynar, J. Sub-

REFERENCE FOR POINTS IN HEADNOTES
[1–4] 72 Am Jur 2d, States, Territories, and Dependencies § 100 *et seq.*

mitted May 14, 1975, at Lansing. (Docket No. 20143.) Decided September 23, 1975.

Complaint by Dorothy D. Walkowski against the Macomb County Sheriff, other police departments and officers, and John R. Plants, Director of Michigan State Police Department for battery, assault, false arrest, unlawful imprisonment, and defamation. Motions by defendant Plants for accelerated judgment and summary judgment denied. Defendant Plants appeals by leave granted. Reversed.

*Bellanca & Beattie,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Patrick A. Aseltyne,* Assistant Attorney General, for defendant Plants.

Before: QUINN, P. J., and BRONSON and N. J. KAUFMAN, JJ.

BRONSON, J. Plaintiff, Dorothy Dian Walkowski, brought suit for battery, assault, false arrest, unlawful imprisonment, and defamation against police officers of the Macomb County Sheriff's Department, St. Clair County Sheriff's Department, and the Michigan State Police Department. Appellant here, John R. Plants, was sued in his capacity as Director of the Michigan State Police Department. Colonel Plants made motions for accelerated judgment and summary judgment, the denial of which he appeals by leave granted.

This cause of action arises out of events occurring on November 1 and 2, 1972. On the night of November 1, plaintiff was stopped by two officers of the Macomb County Sheriff's Department for allegedly running a red light. These two officers

ran a warrant check to determine if there were any outstanding warrants for plaintiff's arrest. They directed their inquiry to the Law Enforcement Information Network (LEIN), a computerized filing system used to store such information. LEIN is maintained by the Michigan State Police Department.

Plaintiff contends that the LEIN system gave forth the false information that plaintiff was wanted on an outstanding warrant for perjury committed in St. Clair County. Defendant agrees that no such warrant was ever in existence. Plaintiff alleges that this false information caused her to be conveyed by the state police to the St. Clair County Jail, where she was incarcerated until she was able to post bond at about 4:00 in the afternoon of November 2.

Colonel Plants asserts that the LEIN "charge code" for perjury and contempt of court was the same at that time. Plaintiff admits that a valid bench warrant for contempt was outstanding against her at this time, resulting from her failure to appear in court for a traffic ticket. Defendant states that the Macomb authorities followed standard procedures and verified the existence of a warrant through the state police, and that all subsequent actions were based upon the valid contempt warrant, with any "false" information having no effect. It is conceded by defendant, however, the perjury is a felony, while contempt is a quasi-criminal misdemeanor. From that fact, plaintiff argues that the police would have not taken her into custody if only the contempt warrant had been involved.

Defendant Plants filed a motion for summary judgment and accelerated judgment. Summary judgment pursuant to GCR 1963, 117.2(1) was

based upon the claim that Plants' actions were not the proximate cause of defendant's injuries. Accelerated judgment, under GCR 1963, 116.1(1)(2), was based upon: (1) the circuit court's lack of subject matter jurisdiction because the Court of Claims has exclusive jurisdiction of this type of claim; and (2) the circuit court's lack of personal jurisdiction over Plants due to his immunity from suit under the doctrine of governmental immunity. Because we hold that defendant John R. Plants is immune from suit, we need reach only that issue.

There is no question that a suit against the Michigan State Police Department by the plaintiff for the wrongs complained of here would be barred by governmental immunity. The new governmental immunity statute, MCLA 691.1407; MSA 3.996(107), was effective as of August 1, 1970, and applies to all injuries occurring after that date, *Campbell v Detroit,* 51 Mich App 34; 214 NW2d 337 (1973). The statute provides immunity when the agency is engaged in a "governmental function". The operations of police departments are governmental functions, *Kelley v East Lansing,* 50 Mich App 511; 213 NW2d 557 (1973), *Anderson v Detroit,* 54 Mich App 496; 221 NW2d 168 (1974). The operations of the state police are covered by the doctrine of governmental immunity.

The extent to which public officials are to be given the benefits of governmental immunity was set out in early Michigan law.[1] As Justice COOLEY concisely summarized, the rule draws a distinction

---

[1] The common law rules on governmental or sovereign immunity apply here because the statute contains the general clause that, "Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed." We read the term "state" to broadly differentiate between the state and its agencies and officers, and other government subdivisions, such as the municipalities, and their agencies and officers.

between "discretionary" or "quasi-judicial" and "ministerial" acts:

"A ministerial officer has a line of conduct marked out for him, and has nothing to do but to follow it; and he must be held liable for any failure to do so which results in the injury of another. A judicial officer, on the other hand, has certain powers confided to him to be exercised according to his judgment or discretion; and the law would be oppressive which should compel him in every case to decide correctly at his peril. It is accordingly a rule of very great antiquity that no action will lie against a judicial officer for any act done by him in the exercise of his judicial functions, provided the act, though done mistakenly, were within the scope of his jurisdiction: * * * . Nor does the rule depend upon whether the tribunal is a court or not; it is the nature of the duties to be performed that determines its application." *Wall v Trumbull,* 16 Mich 228, 235–236 (1867). (Citations omitted.)

That rule is followed in a majority of the states, Prosser, Torts (4th ed), § 132, pp 988–989. The reasons for the rule were further explored in Justice EDWARDS' dissenting opinion to *Williams v Detroit,* 364 Mich 231, 261–262; 111 NW2d 1 (1961):

"In the exercise of discretionary power, governmental duty runs to the benefit of the whole public, rather than to individuals. It is of great importance that this crucial function of democratic decision making be unhampered by litigation.*

---

* " 'Government officials are liable for the negligent performance of their ministerial duties * * * but are not liable for their discretionary acts within the scope of their authority, * * * even if it is alleged that they acted maliciously. * * * Such immunity is not designed to protect the guilty, for "if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing

so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. * * * In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their .duty to the constant dread of retaliation." Learned Hand, J., in *Gregoire v Biddle,* 177 F2d 579, 581.' *Muskopf v Corning Hospital District,* 55 Cal 2d 211, 220, 221; 11 Cal Rptr 89, 94, 95; 359 P2d 457."

In the earlier cases, the rule was directly applied in several situations. It was held that members of city councils are immune from suits arising from their disapproval of the liquor bonds of private citizens, in that those actions are considered "discretionary", *Amperse v Winslow,* 75 Mich 234; 42 NW 823 (1889), *Pawlowski v Jenks,* 115 Mich 275; 73 NW 238 (1897). In *People, for use of Lapeer County Bank v O'Connell,* 214 Mich 410; 183 NW 195 (1921), the Court held that the acts of the county drain commissioner in issuing partial payments for the construction of a drain were "ministerial", and that he could be held personally liable for improperly doing so.

Other cases have had some difficulty distinguishing between two different concepts: (1) whether the officer is procedurally protected from suit under the doctrine of governmental immunity and (2) whether the officer is substantively not liable to the plaintiff for his acts in that no duty is owed to this plaintiff. For example, in the case of *Raynsford v Phelps,* 43 Mich 342; 5 NW 403 (1880), it was held .that seizure of property for delinquent taxes was a ministerial duty, the improper per-

formance of which created liability to the injured party. But the Court even then mentioned the related concept of substantive liability:

"[A] public officer having ministerial duties to perform, *in which a private individual has a special and direct interest,* is liable to such individual for any injury sustained by him in consequence of the failure to perform such duties." *Raynsford, supra,* p 344 (emphasis added).

That language has been used by later cases to produce some confusing results.

In *Rose v Mackie,* 22 Mich App 463; 177 NW2d 633 (1970), the state highway commissioner was being sued for damages resulting from an automobile accident occurring on a state highway. Two causes of action were pleaded. First, defendant was being sued for negligently performing his general duties to oversee the highways and make sure that they are not unsafe. Secondly, the complaint alleged a negligent design and state of repair with respect to the highway, and that defendant failed to correct this situation after notice to his agents.

The Court had little trouble disposing of the first count on grounds that the commissioner had only discretionary duties in this area.[2] They then went

---

[2] The *Mackie* Court stated that the issue did not "merit discussion", citing *McDowell v State Highway Commissioner,* 365 Mich 268; 112 NW2d 491 (1961), and *Longstreet v County of Mecosta,* 228 Mich 542; 200 NW 248 (1924). Both of these cases turn on the ministerial-discretionary distinction although they talk in terms of "looking through and beyond the nominal parties in interest", a doctrine formulated in the *contract* case of *McDowell v Warden of Ionia Reformatory,* 169 Mich 332; 135 NW 265 (1912). As the Court concluded in *Longstreet, supra,* p 551:

"An examination of the highway laws, including the act of 1919, shows a legislative intent to place upon the State highway commission duties of supervision, administration and discretionary control over the highways of the State * * * . Under no view of the case can liability of defendant Rogers either individually or as State highway commissioner be sustained."

on to hold that the second count failed to state a cause of action because the commissioner's duties ran to the public and not the individual plaintiffs. They did *not* base this part of the decision on governmental immunity:

"The official in *Raynsford* had invaded the rights of one person and one person's property. The present situation is much broader in scope, in that the state highway commissioner does not act personally against any single individual in the construction and maintenance of highways. It could in no sense be said that defendant singled out one individual in respect to whom he violated his official duties." *Mackie, supra,* p 467.

The test in Michigan for governmental immunity of public officers was not changed.[3]

---

The "discretionary" test was being applied, but under a different name.

[3] In the *Mackie* opinion, citation to *Massengill v Yuma County,* 104 Ariz 518; 456 P2d 376 (1969), is made concerning the private duty-public duty distinction. That case makes it crystal clear that the public duty test goes to the substantive liability of the official, as Arizona had previously *eliminated* governmental immunity:

"There has been much discussion, by the plaintiffs, of the doctrine of sovereign immunity. * * * But nowhere in the record can we find any attempt by the defendants to envelop themselves in the cloak of immunity. Nor can they do so since this Court in the most unquestionable terms relegated that archaic doctrine to the dustheap of history.

* * *

"But we did not, by those decisions, change the basic elements of actionable negligence the components of which are a duty owed to the plaintiff, a breach thereof and injury proximately caused by such breach. *Morris v Ortiz,* 103 Ariz 119; 437 P2d 652 [1968].

"It is the first of these elements that concerns us here. The general rule pertaining to governmental agencies and public officers is that

" ' * * * if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution.' " *Massengill,* 104 Ariz 520–521; 456 P2d at 378–379.

*See,* also, *Gerneth v Detroit,* 465 F2d 784 (CA 6, 1972), *cert den,* 409 US 1109; 93 S Ct 913; 34 L Ed 2d 690 (1973).

With this background in mind, we come to the case of *Nichols v Zera,* 33 Mich App 274; 189 NW2d 751 (1971). We feel that the *Zera* Court reached the right result for the wrong reasons. In that case, the members of the board of education of the City of Flint were sued for failure to prevent several students from being assaulted by outsiders soon after one school was dismissed. The *Zera* Court applied a "public duty" analysis correctly, but improperly accepted defendants' argument that summary judgment was proper because defendants were "clothed in the sovereign immunity" of the board of education itself. We follow that case here only insofar as agreeing with its result, for the Court should have ruled that summary judgment was proper because the defendants simply lacked a substantive duty toward these particular plaintiffs.[4]

In summary, we hold that the proper test to be used to determine whether a public officer is covered by governmental immunity is one distinguishing between ministerial and discretionary acts. The officer is immune from suit only for the performance of discretionary acts.

Once we have decided that the proper test is one distinguishing between discretionary and ministerial acts, we have little difficulty with the rest of the case. The executive head of the state police clearly exercises discretionary control over the operations of the LEIN system. There are a myriad of decisions to be made concerning the manner in which that system is to be set up and run. We can emphatically say that the acts in relation to this aspect of state police activities are not of the

---

[4] For similar reasons, we disagree with the same analysis in *dictum* found in *Lovitt v Concord School District,* 58 Mich App 593, 601–602; 228 NW2d 479 (1975).

ministerial type, where the path to follow is clear-cut. Consequently, we hold that John R. Plants is immune from suit here, and the trial judge should have entered accelerated judgment in his favor...

Reversed and remanded with instructions for the trial judge to enter an order granting defendant John Plants an accelerated judgement. Costs of this appeal to appellant Plants.