Charles **SCHINDLER, and Mary Schindler, Individually and as Next Friend of Karl Michael Schindler, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 79–1725.**

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1981.

Decided Oct. 9, 1981.

---

554

Lawrence S. Katkowsky, Keller & Katkowsky, Southfield, Mich., for plaintiffs-appellants.

James K. Robinson, U. S. Atty., Detroit, Mich., Thaddeus B. Hodgdon, U. S. Dept. of Justice, Katherine S. Gruenheck, Anthony Steinmeyer, Dept. of Justice, Civ. Div., Washington, D. C., for defendant-appellee.

Before JONES, Circuit Judge, CECIL, Senior Circuit Judge, and BERTELSMAN *, District Judge.

* Hon. William O. Bertelsman, Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

1. The trial judge took some evidence and considered the motion as one to dismiss or in the alternative for summary judgment, but ultimately granted the dismissal for a failure to state a claim.

2. The various statutes pertinent to this opinion are:
   28 U.S.C. § 1346(b):
   "(b) Subject to the provisions of chapter 171 of this title, the district court, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims

BERTELSMAN, District Judge.

This is an appeal from the dismissal of a complaint and amended complaint seeking damages against the United States under the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2671–80 (FTCA)[1] The gravamen of the claim is that the United States negligently granted a license to a private company for the manufacture of polio vaccine according to a certain formula.

The complaints alleged that employees of the Department of Health, Education and Welfare (HEW) negligently failed to require Lederle Laboratories, a Division of American Cyanamid Company, to comply with licensing requirements of the Public Health Services Act, as amended, 42 U.S.C. § 262(d), and with the regulations promulgated pursuant thereto. The complaints further alleged that HEW employees in 1963 wrongfully granted a license to Lederle Laboratories to manufacture and distribute the product Orimune, i. e., a live, oral polio vaccine, combining Sabin vaccine strains, Types 1, 2, and 3 ("trivalent"). Vaccine manufactured in accordance with this formula, it is alleged, was in July, August and September, 1975, administered to plaintiff-appellant Karl Schindler, causing him to contract paralytic poliomyelitis in February, 1976. It is contended that by reason of this alleged negligent licensing, the United States is liable under the Federal Tort Claims Act.[2]

The complaints were very carefully drawn to allege that the claimed negligence

against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."
   28 U.S.C. § 2674:
   "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like cir-

of the United States consisted in failing to observe certain specific requirements of regulations previously enacted, rather than in formulating policy.[3]

The reason for this approach by plaintiff was to seek to avoid the discretionary function exception of the Federal Tort Claims Act, as found in 28 U.S.C. § 2680(a), which states that the waiver of immunity for liability for tort claims against the United States does not apply to—

> "(a) Any claim based upon an act or omission of an employee of the Government . . ., based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

The trial court held that it needed to hear more evidence to determine whether the claim for relief attempted to be alleged against the United States was subject to this discretionary function exception, and declined to pass on the issue. It held, however, that as a matter of law the United

States had no duty to the plaintiffs under state negligence law, which the FTCA adopts by reference. 28 U.S.C. § 1346(b). We reverse because of the latter ruling and remand for further proceedings.

## The Discretionary Function Exception [4]

In *Downs v. United States*,[5] this court held that the functions of the federal government which were immunized by the discretionary function exception were "those involving policy formulation, as distinguished from the day-to-day activities of persons not engaged in determining the general nature of the Government's business." That opinion extensively reviewed the legislative history of the FTCA and the decisions of the Supreme Court of the United States and lower courts interpreting it. This discussion need not be repeated here. Suffice it to say here that the "policy-making" test for determining discretionary functions under the FTCA is in accord with the weight and trend of authority, and has received general approval by the commentators.[6]

---

cumstances, but shall not be liable for interest prior to judgment or for punitive damages."

28 U.S.C. § 2680(a):

"The provisions of this chapter and § 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

3. The exact averments in this regard were that the United States was negligent:

"A. In licensing and allowing manufacture distribution and sale of Orimune utilizing Sabin poliovirus strains without data having been submitted to the Surgeon General which would have established that such strains were free of harmful effect upon administration in the recommended dosage to at least one hundred thousand (100,000) people susceptible to poliomyelitis under circumstances where adequate epidemiological surveillance of neurological illness had been maintained without susceptibility having been demonstrated (sic) by blood tests, stool

examinations and other appropriate methods in violation of former 42 CFR § 73.110(2).

"B. In licensing and continuing to allow the manufacture, distribution and sale of Orimune utilizing Sabin poliovirus strains without data having been submitted to the Surgeon General which would have established that such strains were free of harmful effect upon administration in the recommended dosage to at least one million (1,000,000) people susceptible to poliomyelitis under circumstances where adequate epidemiological surveillance of neurological illness has been demonstrated by blood tests, stool examinations and other appropriate methods, in violation of 21 CFR § 630.10(2)."

4. Because of the wording of 28 U.S.C. § 1346(b), *supra*, most courts consider the applicability of the discretionary function exception to raise a jurisdictional issue. In practice the applicability of the exception is frequently treated as an affirmative defense, however. *See Blessing v. United States*, 447 F.Supp. 1160, 1167 n.6 (E.D.Pa.1978).

5. 522 F.2d 990, 996 (6th Cir. 1975).

6. *See Wright v. United States*, 568 F.2d 153 (10th Cir. 1977); *cert. den.* 439 U.S. 824, 99 S.Ct. 94, 58 L.Ed.2d 117 (1978); *Blessing v.*

In the lower court and here, plaintiff has principally relied on *Griffin v. United States*.[7] *Griffin* held that the approval by an agency of the United States of a certain lot of polio vaccine in contravention of the specific requirements of applicable federal regulations was not subject to the discretionary function exception and, moreover, constituted actionable negligence per se. In reaching this holding and awarding substantial damages to the plaintiff who had contracted polio as a proximate result, as the district court found, of ingesting some of the improperly tested lot of vaccine, the *Griffin* courts followed the same "policy-making test" prevailing in this circuit under *Downs, supra*. Thus, the appellate court emphasized:

> "We do not hold that the Government may be liable for policy determinations made by its officials. Rather, we hold only that the Government may be liable where its employees, in carrying out their duties, fail to conform to pre-existing statutory and regulatory requirements."[8]

Of course, it may immediately be seen that there is a factual difference between the facts alleged in the complaints in this case and those proved in *Griffin*. *Griffin* concerned the government's negligence in testing *a specific lot* of vaccine, some of which the plaintiff ultimately ingested, and which proximately caused her to contract polio. This case involves the alleged negligent approval by the government of the *formula* for a type of polio vaccine, some of which *type* the plaintiff's minor is alleged to have ingested some 13 years later. What the cases have in common, at least when the matter is construed on the face of the pleadings as it must be at this stage of the proceedings, is that both approvals were allegedly granted in violation of detailed federal regulations expressly intended to provide controlling criteria.

Whether or not the obvious factual differences place this case within the discretionary function exception, the trial court did not decide. It held that further evidence would be required before it could determine whether or not policy-making functions were involved in the decision complained of. The trial court stated in its opinion granting the dismissal of the action:

> "*Griffin v. United States*, 500 F.2d 1059 (3d Cir. 1974), is impressive authority to support the plaintiffs' arguments on the immunity and duty issues. The government distinguishes *Griffin* by pointing out that in *Griffin* the government's action involved the approval of a particular lot of vaccine, whereas here the government was involved in the issuance of a license.

> "With respect to the immunity issue, we are primarily concerned with the nature of the governmental function. It is the opinion of the court that *Griffin* may be distinguished on this issue. There may be a significant difference in the discretion involved between testing and licensing. In a given situation the issuance or non-issuance of a license may depend entirely upon compliance with objective standards. In other situations, however, the issuance or non-issuance of a license may call for the exercise of independent judgments. It is the opinion of the court, that it cannot be ascertained as a matter of law that the issuance or non-issuance of a license in this particular case was a discretionary function within the meaning of 28 U.S.C. 2680(a). In this issue the plaintiffs are entitled to make a record, either by trial or on a motion for summary judgment."

---

United States, supra note 4; Harris and Schnepper, *Federal Tort Claims Act: Discretionary Function Exception Revisited*, 31 U.Miami L.Rev. 161 (1976), Zillman, *The Changing Meanings of Discretion: Evolution in the Federal Tort Claims Act*, 76 Mil.L.Rev. 1 (1977); Comment, *Scope of the Discretionary Exception under the Federal Tort Claims Act*, 67 Geo.L.J. 879 (1979); Note, *Torts—Federal Tort Claims Act—The Discretionary Function Ex-* emption to the Federal Tort Claims Act is Limited Strictly to Policy Formulation, 45 U.Cin.L. Rev. 157 (1976) (case note on *Downs v. United States, supra*).

**7.** 500 F.2d 1059 (3d Cir. 1974), affirming *Griffin v. United States*, 351 F.Supp. 10 (E.D.Pa.1972).

**8.** 500 F.2d at 1069.

■ We agree with the trial court that this issue is not ripe for resolution because of the multiple considerations involved.[9] Whether or not the agency decision complained of, which was made under the complex regulations set forth in the complaint, involved policy making on the part of the government requires further factual analysis, and perhaps expert testimony. However, for the reasons stated below, we disagree with the trial court's dismissal of the action.

### Liability of the United States to the Same Extent as a Private Individual Under Like Circumstances

The trial court went on in its opinion to hold that the complaint must be dismissed because the government, under Michigan law, would have no duty to any individual such as the plaintiff but only to the public in general. In reaching this conclusion, the trial court relied on Michigan case law pertaining to the liability of municipal corporations.

Principally, the district court relied on the decision of this court in *Gerneth v. City of Detroit*.[10] There, this court affirmed the dismissal of a complaint alleging negligence on the part of the city in conducting an investigation of the license application of a private patrolman employed as a guard at a bus station. This person, after the city's approval of his license as a private policeman, shot the plaintiff. In affirming the conclusion that liability would not lie in such a situation, this court concluded that the Michigan courts in determining the liability of a Michigan municipal corporation would follow the reasoning of the Supreme Court of Florida to the effect that:

"... a municipality is liable in tort, under the doctrine of respondeat superior,

when its agent or employee commits a tort in the performance, or by the non-performance, of an executive (or administrative) duty within the scope of a governmental function, *only when such tort is committed against one with whom the agent or employee is in privity, or with whom he is dealing or is otherwise in contact in a direct transaction or confrontation.*

"The duty owed by the city's agents or employees, as to the plaintiff, was no different at the time of the alleged negligence than that owed to every other member of the public. In short, the duty breached was a public duty, not a duty owed to the individual injured, foreseeability notwithstanding." [11]

■ We have no doubt that *Gerneth* correctly states the law of Michigan with regard to the liability for negligence of Michigan municipal corporations.[12] We hold, however, that the trial court erred in its legal conclusion that this test was applicable to the liability of the United States under the FTCA. Such a conclusion is contrary to long-standing decisions of the Supreme Court of the United States. In fairness, it should be pointed out that, inasmuch as these decisions were not cited to us in the briefs of either party, we may assume that neither were they cited to the trial court.

The first of these Supreme Court cases which we regard as controlling is *Indian Towing Co. v. United States*.[13] There the Court, in holding that the United States could be liable for negligent maintenance of a lighthouse which it had undertaken to operate, specifically ruled that the FTCA did not incorporate by implication the nuances and distinctions of state law per-

9. *See* Annotation, 35 ALR Fed. 481.

10. 465 F.2d 784 (6th Cir. 1972).

11. *City of Tampa v. Davis*, 226 So.2d 450, 454–455 (Fla.App.1969) (emphasis original), quoted 465 F.2d at 786.

12. *See Walkowski v. Macomb County Sheriff*, 64 Mich.App. 460, 236 N.W.2d 516 (1975). It should be noted that Michigan provides govern-

mental immunity for "discretionary" acts, as distinguished from "ministerial acts." *Cook v. Bennett*, 94 Mich.App. 93, 288 N.W.2d 609 (1980). If there is no immunity the Michigan courts then use the analysis illustrated by *Gerneth, supra*, to determine if a duty was owed.

13. 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

taining to the liability of municipal corporations.

The Court specifically rejected the government's argument in that case that the language of § 2674 "imposing liability 'in the same manner and to the same extent as a private individual under like circumstances ...' must be read as excluding liability in the performance of activities which private persons do not perform." [14]

The FTCA, the Court held, did not, as does the common law of some states, provide immunity for "uniquely governmental functions." The Court went on to say:

"The Government reads the statute as if it imposed liability to the same extent as would be imposed on a private individual 'under the same circumstances.' But the statutory language is 'under like circumstances,' and it is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner.

"Furthermore, the Government in effect reads the *statute as imposing liability in the same manner as if it were a municipal corporation and not as if it were a private person, and it would thus push the courts into the 'non-governmental'—'governmental' quagmire that has long plagued the law of municipal corporations.* A comparative study of the cases in the forty-eight States will disclose an irreconcilable conflict. More than that, the decisions in each of the States are disharmonious and disclose the inevitable chaos when courts try to apply a rule of law that is inherently unsound. The fact of the matter is that the theory whereby municipalities are made amenable to liability is an endeavor, however awkward and contradictory, to escape from the basic historical doctrine of sovereign immunity. *The Federal Tort Claims Act cuts the ground from under that doctrine; it is not self-defeating by covertly embedding the casuistries of municipal liability for torts."* [15]

And in *Rayonier, Inc. v. United States*,[16] the Court held that under the FTCA, the United States is not immune from liability for negligence of employees of the Forest Service in fighting a forest fire, if in similar circumstances a private person would have been liable under the laws of the state in which the fire occurred. Here again, the Court rejected the government's argument that it was entitled to the privileged status that applicable state law would afford to public firemen.[17] After quoting 28 U.S.C. §§ 2674 and 1346(b), the Court said:

"These provisions, given their plain natural meaning, make the United States liable to petitioners for the Forest Service's negligence in fighting the forest fire *if, as alleged in the complaints, Washington law would impose liability on private persons or corporations under similar circumstances.*

"Nevertheless the Government ... contends that Congress by the Tort Claims Act did not waive the United States' immunity from liability for the negligence of its employees when they act as public firemen. It argues that the Act only imposes liability on the United States under circumstances where governmental bodies have traditionally been responsible for the misconduct of their employees and that neither the common law nor the law of Washington imposes liability on municipal or other local governments for the negligence of their agents acting in the 'uniquely governmental' capacity of public firemen. But as we recently held in *Indian Towing Co. v. United States*, 350 U.S. 61 [76 S.Ct.

---

14. 350 U.S. at 64, 76 S.Ct. at 124.

15. 350 U.S. at 64, 65, 76 S.Ct. at 124 (emphasis added). *See Zabala Clemente v. United States*, 567 F.2d 1140, 1144 (1st Cir. 1978) *cert. den.* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); *In re Franklin National Bank Securities Litigation*, 445 F.Supp. 723, 729 (E.D.N.Y.1978).

16. 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957).

17. 352 U.S. at 318, 77 S.Ct. at 376.

122, 100 L.Ed. 48], the test established by the Tort Claims Act for determining the United States' liability *is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred. We expressly decided in Indian Towing that the United States' liability is not restricted to the liability of a municipal corporation or other public body* and that an injured party cannot be deprived of his rights under the Act by resort to an alleged distinction, imported from the law of municipal corporations, between the Government's negligence when it acts in a 'proprietary' capacity and its negligence when it acts in a 'uniquely governmental' capacity. To the extent that there was anything to the contrary in the *Dalehite* case it was necessarily rejected by *Indian Towing*." [18]

Lastly, in *United States v. Muniz* [19] the Court held that prisoners in federal penitentiaries could sue under the FTCA for the negligence of prison employees. Referring to the problem that, when it came to applying state law, some states held that jailers and prison officials were immune from such suits, the Court said:

"Such cases should not be persuasive. Just as we refused to import the 'casuistries of municipal liability for torts' in *Indian Towing*, so we think it improper to limit suits by federal prisoners because of restrictive state rules of immunity. *Whether a discretionary function is involved is a matter to be decided under 28 U.S.C. § 2680(a), rather than under state*

rules relating to political, judicial, quasi-judicial, and ministerial functions." [20]

Although Michigan at present does not follow the proprietary-governmental distinction, as discussed in *Indian Towing* and *Rayonier, supra*, it has substituted for it an equally complex doctrine. This is the private-public duty distinction, as discussed by this court in *Gerneth v. City of Detroit.*[21]

As pointed out in a leading text on the subject of tort law,[22] governmental immunity, state and federal, has been a problem since long before the enactment of the Federal Tort Claims Act. The conflicting policy considerations are that, on the one hand, granting the government immunity from liability for the negligence of its employees and imposing the full loss caused by such negligence on an injured individual is not only repugnant to democratic philosophy, but also contrary to principles of modern tort law, which tend to impose liability on those who can spread the risk of loss to consumers or taxpayers. For these reasons, the doctrine of governmental immunity at all levels began to be eroded by statutory and case law. On the other hand,

"At the outset it was more or less obvious that some vestige of the governmental immunity must be retained. It was, for example, unthinkable that either state of (sic) a municipality should be held liable for a wrong decision of its courts, for an erroneous evaluation of property by a tax assessor. In several of the decisions abrogating the immunities, there was language used which reserved

---

**18.** 352 U.S. at 318–319, 77 S.Ct. at 376–377 (emphasis added). Both *Indian Towing* and *Rayonier* interpreted *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

**19.** 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963).

**20.** 374 U.S. at 164–65, 83 S.Ct. at 1858–1859. (Emphasis added).

**21.** 465 F.2d 784 (6th Cir. 1972), discussed *supra* at text accompanying notes 10 ff. Michigan applies the ministerial-discretionary distinction in determining the applicability of governmental immunity. *See* fn. 12. However, Michigan further recognizes the public-private duty distinction to determine whether a substantive

duty is imposed on a government agency or public official. *See Walkowski v. Macomb County Sheriff*, 64 Mich.App. 460, 236 N.W.2d 516 (1975). Michigan's public-private duty distinction is clearly a vestige of governmental immunity insofar as it imposes no duty, hence no liability, on a governmental unit for obligations which are deemed duties to the public. *See Gerneth v. City of Detroit*, 465 F.2d 784 (6th Cir. 1972). The Michigan courts, themselves, admit that their governmental liability decisions tend to be confusing. *Walkowski v. Macomb County Sheriff*, 236 N.W.2d at 520.

**22.** Prosser, *Torts* § 131.

the possibility that there might still be immunity as to 'legislative' or 'judicial' functions, or as to acts or omissions of government employees which were 'discretionary.' " [23]

As pointed out in *Gerneth, supra,* the legislature and courts of Michigan have deemed it appropriate to preserve this necessary "vestige of governmental immunity" through their public-private duty distinction. But this is not the solution which has been adopted by the Federal Tort Claims Act, which has chosen to meet this necessity through the discretionary function exemption of 28 U.S.C. § 2680(a).

It is, therefore, self-defeating and illogical to hold that the United States may have waived its immunity with regard to a particular act because it is not a discretionary function, and then turn to the law of the state and incorporate the means by which it has chosen to solve this same problem of preserving this necessary "vestige of government immunity." As the Court held in *United States v. Muniz,* it is "improper to limit suits [under the FTCA] because of restrictive state rules of immunity." [24]

**Use of the Federal Regulatory Provisions**

The authorities are not entirely harmonious concerning the interplay of state negligence law and the federal statute or regulations under which the agency accused of negligence is operating.[25] However, we believe that the apparent conflicts may be resolved, as follows.

It is clear that usually the federal regulatory statute is not the source of a private right of action.[26] State law is the source of the cause of action, the United States' customary immunity thereto being waived by the FTCA. The federal statute or regulation may well be relevant to the analysis of the state cause of action, however.

■ The elements of a cause of action for tortious injury under Michigan law, as under the law of most states, are: (1) the existence of a legal duty by defendant toward plaintiff; (2) the breach of such duty; (3) a proximate causal relationship between the breach of such duty and an injury to the plaintiff; and (4) damage to the plaintiff.[27] In applying the FTCA, the court must use state law pertaining to private persons, not municipal corporations, to determine if these elements are present.

■ In determining the first element, the existence of a duty from the plaintiff to the defendant, the federal regulatory statute may be relevant in defining the scope of the undertaking of the United States and the plaintiff's right to rely thereon,[28] if the action is based on an alleged failure of the United States to observe its own regula-

---

**23.** Id. at 986 (Emphasis added.)

**24.** 374 U.S. at 164, 83 S.Ct. at 1858. Judge Lively's opinion in *Raymer v. United States,* 660 F.2d 1136 (6th Cir. 1981), makes this point emphatically clear. The decision in *Gelley v. Astra Pharmaceutical Products, Inc.,* 610 F.2d 558 (8th Cir. 1979), may have proved confusing to counsel herein, and its meaning should be clarified. The key to that decision is that the applicable state law (Minnesota) made no distinction in the duty of private and municipal corporations. For this reason, it was not improper for the court to use state cases involving municipal corporations to demonstrate that *private* persons would have no duty to the plaintiffs under Minnesota law under the circumstances presented in that case. 610 F.2d at 562.

**25.** *See,* Note, *Defining the Government's Duty Under the Federal Tort Claims Act,* 33 Vand.L. Rev. 795 (1980).

**26.** *Gelley v. Astra Pharmaceutical Products, Inc.,* 610 F.2d 558, 562 (8th Cir. 1979); *Blessing v. United States,* 447 F.Supp. 1160, 1166 (E.D. Pa.1978).

**27.** *Connelly v. Paul Ruddy's Equipment Repair and Service Co.,* 388 Mich. 146, 200 N.W.2d 70 (1972).

**28.** *See Zabala Clemente v. United States,* 567 F.2d 1140 (1st Cir. 1978) *cert. den.* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); *Gelley v. Astra Pharmaceutical Products, Inc.,* 610 F.2d 558 (8th Cir. 1979); *United Scottish Insurance Company v. United States,* 614 F.2d 188, 194 (9th Cir. 1979); *Thompson v. United States,* 592 F.2d 1104 (9th Cir. 1979); *In re Franklin National Bank Securities Litigation,* 445 F.Supp. 723, 730–31 (E.D.N.Y.1978); *Blessing v. United States, supra.*

tions.[29] The federal regulation or statute may also be relevant in assessing the second element of the cause of action, if, under state law criteria, it may be considered the kind of statute or regulation violation of which is negligence *per se*.[30]

### Restatement Torts 2d, §§ 323 and 324A

Since most of the cases involving problems similar to that presented in the case at bar, discuss the applicability of Restatement of Torts 2d, §§ 323 and 324A,[31] a brief discussion of the application of concepts embodied therein seems appropriate as a guide for further proceedings in the case.

■ Section 323 concerns the undertaking of an obligation by a defendant directly to the plaintiff. Since the law of Michigan recognizes the principles summarized in this section,[32] the trial court in applying the FTCA, should look to the regulatory statutes involved or the actual conduct of the United States [33] to determine if it has undertaken gratuitously or for a consideration to render services to the plaintiff, such as would be the basis of liability of a private person under like circumstances.

Examples of situations where it has been held that the United States has made such an undertaking are *Indian Towing Co. v. United States*,[34] in which the United States was held to have undertaken to operate a lighthouse under such circumstances that the public had a right to rely on its careful operation, and a recent decision of this court in which the United States was held to have made an undertaking to a borrower under a federal loan program that it would make a careful inspection of the house being purchased.[35]

■ In applying § 324A the court should similarly examine the regulatory statutes and actual conduct of the United States to see if under Michigan law it has undertaken to perform services for a person other than the plaintiff, which would give rise to a duty to the plaintiff under the principles stated in that section. An example of the

---

**29.** An excellent example of this is the recent decision of this court in *Neal v. Bergland*, 646 F.2d 1178 (6th Cir. 1981), in which federal regulations were construed as an undertaking to the owner of a house that it would be carefully inspected by federal housing inspectors. *Cf. Raymer v. United States*, 660 F.2d 1136 (6th Cir. 1981) (government's undertaking insufficient to give rise to duty to plaintiff).

**30.** *See Griffin v. United States*, 500 F.2d 1059 (3d Cir. 1974); *Geo. Byers Sons, Inc. v. East Europe Import Export, Inc.*, 463 F.Supp. 135 (D.Md.1979). *Cf. Betesh v. United States*, 400 F.Supp. 238 (D.D.C.1974).

**31.** *See, e. g., Raymer v. United States*, 660 F.2d 1136 (6th Cir. 1981); *Blessing v. United States*, 447 F.Supp. at 1186 ff. These sections read:
§ **323. Negligent Performance of Undertaking to Render Services.**
"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
"(a) his failure to exercise such care increases the risk of such harm, or
"(b) the harm is suffered because of the other's reliance upon the undertaking."
§ **324A. Liability to Third Person for Negligent Performance of Undertaking.**

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
"(a) his failure to exercise reasonable care increases the risk of such harm, or
"(b) he has undertaken to perform a duty owed by the other to the third person, or
"(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

**32.** *Hart v. Ludwig*, 347 Mich. 559, 79 N.W.2d 895 (1956); *see also Forwell v. Keaton*, 396 Mich. 281, 240 N.W.2d 217 (1976) *reversing* 51 Mich.App. 585, 215 N.W.2d 753 (1974); *see Ray v. TransAmerica Insurance Co.*, 46 Mich. App. 647, 208 N.W.2d 610 (1973) (Mich. adoption of § 324A).

**33.** *See In re Franklin National Bank Securities Litigation*, 445 F.Supp. 723, 731 (E.D.N.Y.1978).

**34.** 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

**35.** *Neal v. Bergland*, 646 F.2d 1178 (6th Cir. 1981).

appropriate type of analysis is that made by Judge Becker in *Blessing v. United States*,[36] concerning possible liability arising out of the inspections of federal inspectors operating under the Occupational Safety and Health Act.

■ It should be noted that in *Griffin v. United States*,[37] the only other known polio vaccine case, the court did not advert to Restatement §§ 323 and 324A but rather found that under applicable state law, failure of the United States to observe its own regulations was a breach of duty to the plaintiff, because it exposed her to a recognizable risk of harm.[38] The trial court in the case at bar should also examine Michigan law pertaining to private persons to determine if this approach is appropriate.

### CONCLUSION

We wish to make clear that our reversal of this case does not necessarily mean that the government will ultimately be found liable herein. First of all, when it has heard evidence and addressed the discretionary function issue, the trial court may determine that, under the circumstances, the decisions of the government in this matter were of a policy-making nature and, therefore, privileged under the discretionary function exception.

Further, even if the agency decisions are determined not to have been discretionary functions, it may be found that under the law of Michigan a private person acting under similar circumstances as the government would have no duty to the plaintiffs,[39] or that such a private person would not be liable for some other reason arising out of Michigan tort law pertaining to the liability of private persons. But it is on the basis of Michigan's law pertaining to private per-

sons, not to municipal corporations or other governmental entities, that these issues must be resolved.

For the reasons above stated the judgment of the district court dismissing the complaint is reversed for proceedings not inconsistent with this opinion.

---

**36.** 447 F.Supp. 1160, 1187–8 (E.D.Pa.1978) (holding no liability existed under the circumstances). Judge Lively makes a similar analysis in *Raymer v. United States*, 660 F.2d 1136 (6th Cir. 1981).

**37.** 351 F.Supp. 10, 34 (E.D.Pa.1972) *aff'd* 500 F.2d 1059 (3d Cir. 1974).

**38.** *See* Restatement, Torts 2d § 281.

**39.** *Cf. Zabala Clemente v. United States*, 567 F.2d 1140 (1st Cir. 1978) *cert. den.* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); *Raymer v. United States*, 660 F.2d 1136 (6th Cir. 1981); *Bernitsky v. United States*, 463 F.Supp. 1121 (E.D.Pa.1979); *In re Franklin National Bank Securities Litigation*, 445 F.Supp. 723 (E.D.N.Y.1978).