FARWELL v KEATON

1. NEGLIGENCE—INJURED PERSONS—NONFEASANCE—VOLUNTARY AS-
   SISTANCE.

   No one is obliged to assist a person injured by another, but if he
   voluntarily assumes the duty he is required to do so with
   reasonable prudence and care.

2. NEGLIGENCE—INJURED PERSONS—MEDICAL ASSISTANCE—NONFEA-
   SANCE—DUTY TO ASSIST.

   No duty to obtain medical attention for an injured person will
   arise from the particular relationship of the parties where the
   need for medical attention was not known, and could not have
   become known by the exercise of ordinary care of the person
   sought to be charged with the duty.

3. TORTS—NEGLIGENCE—INJURED PERSONS—VOLUNTARY ASSISTANCE—
   ABANDONMENT OF ASSISTANCE.

   Gratuitous and voluntary assistance to an injured person need
   not be continued indefinitely or even until everything has been
   done to aid and protect the injured person, and may normally
   be abandoned at any time unless the gratuitous acts have put
   the injured person in a worse position; motives in discontinuing
   the services are immaterial.

4. TORTS—NEGLIGENCE—INJURED PERSONS—ABANDONMENT OF ASSIST-
   ANCE.

   No liability arose from the abandonment of the voluntarily
   assumed duty of aiding an injured party by furnishing ice for
   his injuries where there was no evidence to indicate to what, if
   any, extent the injured party was induced to forego additional
   treatment, or that his condition was worsened by the voluntary
   assistance.

Appeal from Wayne, Robert Cunningham, J.

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 57 Am Jur 2d, Negligence § 46.

Duty and liability of one who voluntarily undertakes to care for
injured person, 64 ALR2d 1179.

Submitted Division 1 January 11, 1974, at Detroit. (Docket No. 14735.) Decided March 4, 1974. Leave to appeal granted, 392 Mich —.

Complaint by Richard M. Farwell, Jr., administrator of the estate of Richard M. Farwell, against Donald Keaton, Daniel Keaton, Terry Ingland, Robert Brock, Jr., and David Siegrist, for damages for wrongful death. Verdict and judgment of no cause of action for defendants Brock and Daniel Keaton, default judgment against defendants Ingland and Donald Keaton, and a verdict and judgment for plaintiff against defendant Siegrist. Defendant Siegrist appeals. Reversed.

*Kenneth M. Davies, P. C.,* for plaintiff.

The Legal Aid Office (by *Virginia A. Hetmanski),* for defendants Daniel Keaton and Robert Brock, Jr.

*Martin, Bohall, Joselyn, Halsey & Rowe, P. C.* (by *William G. Jamieson),* for defendant Siegrist.

Before: McGREGOR, P. J., and J. H. GILLIS and O'HARA,* JJ.

McGREGOR, P. J. This is a wrongful death action brought by plaintiff for the death of his son. The lawsuit was tried before a jury which returned a verdict in favor of plaintiff and against defendant Siegrist in the amount of $15,000; at the same time the jury returned a verdict of no cause of action in favor of defendants Brock and Daniel Keaton. A default judgment was entered against

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

defendants Ingland and Donald Keaton, who never appeared.

Factually, it appears that, on August 26, 1966, Richard Murray Farwell, deceased 18-year-old son of the plaintiff, visited the home of his friend, David Siegrist, a 16-year-old; that evening they drove to a trailer rental lot, where Siegrist was returning an automobile he had borrowed from a friend who was employed by the rental agency.

Siegrist and Farwell planned to wait in the car until the friend had finished work and then "drive around," stopping at various restaurants and drive-ins. While they were waiting, Siegrist estimated that they consumed "four or five" beers each.

Shortly before nine o'clock p.m., two teenage girls walked past the car. After an unsuccessful attempt to engage them in conversation, Farwell left the car and followed the girls; Siegrist got out of the car and followed Farwell.

When the girls reached a restaurant a short distance down the street, they apparently complained to those present that they were being followed. Defendants Ingland, Brock, Donald Keaton, Daniel Keaton, and at least two others in the restaurant began to chase Farwell and Siegrist, both of whom ran back to the trailer lot.

Siegrist escaped by ducking into the trailer rental office, where he requested those inside to assist Farwell. They stepped out of the office and were confronted by the group which had been chasing Siegrist and Farwell. The two groups faced each other, but no violence ensued, and the two groups scattered.

It was then discovered for the first time that Farwell had been caught and beaten by those who

had been pursuing him and Siegrist; Farwell was found underneath his automobile in the lot.

Farwell was taken to the trailer rental office, where Siegrist gave him a plastic bag full of ice for his injuries. Shortly thereafter, Farwell and Siegrist left the rental office and, between ten o'clock p.m. and midnight, they visited four different drive-in restaurants. While enroute from the third to the fourth restaurant, Farwell stated that he wanted to lie down, climbed into the back seat, and went to sleep. Around midnight, Siegrist drove the car to the home of Farwell's grandparents, parked it in the driveway, and attempted to rouse Farwell. When the latter merely made a sound as if "in a deep sleep", Siegrist left with a friend who had followed him to the grandparents' house. The next morning, Farwell was found by his grandparents, apparently taken to a hospital, and died of an epidural hematoma.

At the close of plaintiff's proofs, defendant Siegrist moved for a directed verdict on the grounds that he had no duty to obtain medical assistance for Farwell as a matter of law. In the alternative, the motion was based upon the proposition that plaintiff failed to establish that any conduct on the part of Siegrist proximately caused Farwell's death. The motion was denied.

After the jury returned a verdict of $15,000 in favor of the plaintiff, defendant Siegrist moved for a judgment notwithstanding the verdict on the grounds that the trial court erred when it failed to direct a verdict in his favor and that the verdict was inconsistent with the weight of the evidence. This motion was also denied and defendant appeals.

In determining whether the trial court erred in denying defendant's motions for a directed verdict

and judgment notwithstanding the verdict, this Court must view all the evidence adduced at trial in the light most favorable to plaintiff, and decide whether the law imposed a duty upon defendant Siegrist to obtain medical assistance for Farwell. See *Grayson v Detroit,* 46 Mich App 152; 207 NW2d 413 (1973).

At the outset of our discussion, it is vital to note that plaintiff is not arguing that some type of affirmative conduct on the part of defendant proximately caused Farwell's death. Rather, plaintiff asserts that defendant's failure to secure medical assistance for the decedent was negligent and that this negligence was a proximate cause of Farwell's death. Thus, we are faced with a classic case of nonfeasance as opposed to the more typical assertion of misfeasance. The distinction is clearly drawn by Dean Prosser:

"In the determination of the existence of a duty, there runs through much of the law a distinction between action and inaction:

\* \* \*

"Hence there arose very early a difference, still deeply rooted in the law of negligence, between 'misfeasance' and 'nonfeasance'—that is to say, between active misconduct working positive injury to others and passive inaction or a failure to take steps to protect them from harm." Prosser, Torts (4th ed), § 56, pp 338–339.

The significance of the foregoing distinction is that whereas a cause of action generally arises in favor of a party injured through another's misfeasance, no such action lies to recover for injuries sustained as the result of nonfeasance. This is simply a corollary of the principle that everyone is obligated to so conduct himself so as not to create an unreasonable risk of harm to others, and yet no

one is obliged to assist one who has been injured by another or himself.

However, even though there exists no general duty to come to the assistance of one's fellowman, it is true, as plaintiff asserts, that if one voluntarily assumes the duty of lending aid, he is required to do so with reasonable prudence and care. *Hart v Ludwig,* 347 Mich 559; 79 NW2d 895 (1956); 57 Am Jur 2d, Negligence, § 46, p 393. See, also, Anno, 64 ALR2d 1179 (1959), *Duty and Liability of One Who Voluntarily Undertakes to Care for Injured Person,* and Anno, 33 ALR3d 301 (1970), *Duty of One Other than Carrier or Employer to Render Assistance to One for Whose Initial Injury He is not Liable.*

The fault in plaintiff's position on appeal lies not in the soundness of the foregoing principle, but, rather, in its applicability to the case presently under consideration.

Viewing the facts in the light most favorable to the plaintiff, there is no evidence to support the conclusion that defendant Siegrist ever assumed, voluntarily or otherwise, the duty of obtaining medical assistance for his injured friend. Testimony establishes that Siegrist had no way of knowing that Farwell had suffered an injury which required immediate medical attention and was potentially fatal. No testimony was adduced which indicated that anyone but a physician would have reason to suspect the extent or severity of Farwell's injuries. Siegrist testified that Farwell wanted to go out to the drive-ins; that he never complained of pain; that between ten p.m. and midnight the two of them visited four different drive-ins; that Farwell was interested in "retaliation" against those who had beaten him; that after visiting three of the drive-ins and while on their

way to the fourth, Farwell stated that he wanted to lie down and climbed into the back seat and apparently went to sleep; and that Farwell was apparently asleep when Siegrist left him in the car.

These facts in no way indicate that Siegrist knew, or should have known, that immediate medical attention was imperative. Absent such knowledge, Siegrist was under no legal duty to obtain such aid.

"[N]o duty to furnish medical attention will arise from the particular relationship of the parties where the necessity for medical attention is not known to the person sought to be charged with the duty and could not have become known by the exercise of ordinary care." 65 CJS, Negligence, § 63(103), p 857.

Since defendant Siegrist neither knew nor should have known of the necessity of medical treatment, we hold as a matter of law that he was under no duty to obtain such treatment. The trial court, therefore, erred in denying defendant's motions for a directed verdict and judgment notwithstanding the verdict.

We note additionally that, even if defendant Siegrist's act of giving Farwell a bag full of ice for his injuries while at the trailer rental office were construed as a gratuitous and voluntary assumption of a duty to render temporary medical assistance, that duty was abandoned when the young men decided to embark upon the journey from restaurant to restaurant.

Regarding such abandonment of a voluntarily assumed duty, the Restatement Torts, 2d, § 323, comment c, at p 137, notes:

"The fact that the actor gratuitously starts in to aid another does not necessarily require him to continue

his services. He is not required to continue them indefinitely, or even until he has done everything in his power to aid and protect the other. The actor may normally abandon his efforts at any time unless, by giving the aid, he has put the other in a worse position than he was in before the actor attempted to aid him. His motives in discontinuing the services are immaterial."

Liability in cases involving abandonment of an assumed duty or negligence in its performance has generally been predicated upon a finding that the acts of the defendant have "made the situation worse, either by increasing the danger, or by misleading the plaintiff into the belief that it has been removed, or depriving him of the possibility of help from other sources, as where he is induced voluntarily to forego it". Prosser, Torts (4th ed), § 56, p 347. See also *Steckman v Silver Moon, Inc,* 90 NW2d 170; 64 ALR2d 1171 (SD, 1958).

Since there was no evidence to indicate to what, if any, extent Siegrist's act of furnishing the decedent with the bag full of ice induced the latter to forego additional treatment or worsened his condition, Siegrist's abandonment of the duty, when the young men began driving from restaurant to restaurant, gives rise to no liability on defendant's part.

Reversed. Costs to appellants.

All concurred.