**Marvin WYNN, as next friend of Dustin Wynn, Plaintiffs,**

v.

**STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Defendant.**

Civ. A. No. 93–73797.

United States District Court,
E.D. Michigan,
Southern Division.

June 23, 1994.

Barry LaKritz, Farmington Hills, MI, for plaintiffs.

Mary Rentz, Plunkett Cooney, Detroit, MI, for defendant.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO VOLUNTARILY DISMISS THE ACTION WITHOUT PREJUDICE

GADOLA, District Judge.

On March 10, 1994, plaintiff filed a motion seeking to voluntarily dismiss the instant action without prejudice. Defendant filed a response in opposition to plaintiff's motion to dismiss March 29, 1994. Plaintiff filed a reply April 1, 1994 and a supplemental reply April 28, 1994. On June 14, 1994, plaintiff filed a second supplemental reply asking that the motion to voluntarily dismiss be considered, in the alternative, as a motion to amend the complaint and remand the case to state court.

On April 18, 1994, defendant filed a motion for partial summary judgment. Plaintiff filed a response April 26, 1994.

Oral argument on both plaintiff's motion to dismiss and defendant's motion for partial summary judgment was heard June 17, 1994. Discovery closed in April 1994.

### I. Facts

On August 16, 1978, plaintiff's then eight-month old son, Dustin Wynn, was seriously injured in an automobile accident. As a result of the accident, he was thrown from the vehicle and sustained a severe closed head injury, as well as other injuries, including but not limited to a diastatic fracture across the coronal suture line of the skull, an intracerebral hematoma, generalized brain swelling, a transverse fracture of the distal femur, a left third nerve palsy, a left peripheral seventh nerve palsy, and left-sided hemiparesis. At the time of the accident, plaintiff held an automobile insurance policy with defendant State Automobile Mutual Insurance Company ("Mutual Insurance"), which policy is governed by Michigan No–Fault insurance laws.

Plaintiff instituted this action in Washtenaw County Circuit Court on August 12, 1993. Defendant removed the action to federal court on September 8, 1994, alleging diversity jurisdiction.

In Count I of the complaint, plaintiff alleges that since 1978 he and his wife have had to care for their disabled son twenty-four hours per day, which care plaintiff claims is compensable under the Michigan No–Fault insurance laws. In Count II of the complaint, plaintiff alleges that defendant has failed to pay certain first party benefits to which plaintiff is entitled. And in Count III, plaintiff alleges that defendant is liable for damages incurred by plaintiff and plaintiff's minor as a result of defendant's "negligent failure to advise its insured of benefits actually recoverable."

Plaintiff claims that during discovery it became apparent that with respect to Count III, there is an additional non-diverse party, Recovery Unlimited Inc., who should be joined as a defendant in the action. Recovery Unlimited Inc., a Michigan corporation, was retained by defendant to oversee and monitor Dustin Wynn's rehabilitation. Plaintiff seeks the court's permission to voluntarily dismiss the action without prejudice in order that plaintiff may refile his action in state court joining both the diverse defendant Mutual Insurance and the non-diverse defendant Recovery Unlimited Inc. In his supplemental reply of June 14, 1994, plaintiff asks that his motion to dismiss be considered, in the alternative, as a motion to amend the complaint to add the non-diverse defendant and motion to remand to state court for lack of diversity.

Defendant, on the other hand, opposes dismissal without prejudice and opposes the plaintiff's request to add Recovery Unlimited Inc. as a defendant. Defendant seeks summary judgment on Counts I and III of the complaint.

For the following reasons, the court will deny defendant's motion as to Count I, grant defendant's motion as to Count III, deny plaintiff's motion to voluntarily dismiss, and deny plaintiff's alternative motion to amend and remand.

## II. Analysis

Defendant argues that both Counts I and III of the complaint fail to state a claim upon which relief can be granted. As to Count I, defendant also argues that discovery has shown that there is no genuine issue of material fact. Count I therefore shall be analyzed by the court as a motion for summary judgment and Count III shall be analyzed as a motion to dismiss.

### A. Count I: Plaintiff's Claim for Payment of Services Rendered by Family Members in Caring for Plaintiff's Minor

### (i). Standard of Review for a Motion for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2553; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a non-movant must do more than raise some doubt as to the existence of a fact; the non-movant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the non-movant's own pleadings and affidavits. *Id.*

**(ii). Analysis of Count I**

Defendant claims that Count I fails to state a claim upon which relief can be granted pursuant to Michigan's No–Fault Act. The brief supporting the motion, however, does not argue this issue beyond citing some cases which purportedly stand for the proposition that "the expense must be incurred." Defendant's Brief at 11, citing *Manley v. Detroit Auto. Inter–Ins. Exch.,* 425 Mich. 140, 169, 388 N.W.2d 216 (1986), and Defendant's Brief at 12, citing *Neumann v. State Farm Mutual Auto. Ins. Co.,* 180 Mich.App. 479, 447 N.W.2d 786 (1989) (plaintiff's claim for reimbursement of undocumented travel expenses is dismissed). Without further argument, the court must assume that defendant attempts to imply by citing these cases that plaintiff cannot be compensated for services performed by family members because no "expense" was "incurred."

■ However, as plaintiff points out, the Michigan courts have held that under the Michigan No–Fault Act, family members are entitled to compensation for the extraordinary services they render to an injured insured. Section 500.3107(a) of the Michigan No–Fault Act provides for payment of all "[a]llowable expenses consisting of all reasonable charges incurred for necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Mich.Comp.Laws Ann. § 500.3107. The Michigan courts have unequivocally held that this section allows compensation for services performed by family members in caring for a catastrophically injured person, such as Dustin Wynn, who is in need of extraordinary care. *Manley v. Detroit Auto. Inter–Ins. Exch.,* 127 Mich.App. 444, 453–54, 339 N.W.2d 205 (1983) (legal duty of parents to support their children has no effect on whether services performed by a parent for a child are an allowable expense under Michigan No–Fault laws); *Van Marter v. American Fidelity,* 114 Mich.App. 171, 179–80, 318 N.W.2d 679 (1982) (step-mother's care of incompetent step-son compensable under Michigan No–Fault laws). The statute "provides for 'all reasonable charges' which relate to the care, recovery or rehabilitation of the injured person. The statute does not require that these services be supplied by 'trained medical personnel.'" *Van Marter,* 114 Mich. App. at 179, 318 N.W.2d 679. Thus, as to Count I of the complaint, plaintiff has alleged a legally cognizable claim.

■ Defendant also argues in its motion for partial summary judgment that discovery has shown that there is no genuine issue of material fact with respect to Count I. The court disagrees.

Plaintiff presents the April 17, 1993 Case Management Report of Marilyn Koster, MA, CCC, SLP, a Case Manager with the Living Learning Center, summarizing Dustin Wynn's case history and evaluating his past, present and future treatment needs. Exhibit 1 to Plaintiff's Response. Plaintiff also presents the April 15, 1994 "Managed Care Evaluation" report of Renee K. Totty, BS.RN., CCM, a managed care consultant and purportedly an expert in the field of long-term medical care. Exhibit 2 to Plaintiff's Response. Totty's report evaluates "[t]he level

of care that has been provided for Dustin by his parents and other significant family members" to be "that which would be provided by a trained and experienced Home Health Aide (HHA)." *Id.* at 4. The report lists the hourly market rate of an HHA for eight of the years between 1978 and 1992. On April 21, 1994, Totty prepared an addendum to her report detailing her opinion of the monetary value of the attendant care services that were provided Dustin Wynn by his parents.[1] Exhibit 3 to Plaintiff's Response.

The court finds that these documents clearly create a genuine issue of material fact with respect to the time Dustin Wynn's parents have invested in his care and the amount of compensation that defendant may be obligated to pay them for these services.

## B. Count III: Whether Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted

Defendant's motion alleges that Count III of the complaint fails to state a claim upon which relief can be granted. Count III alleges that defendant is liable for damages arising out of "defendant's negligent failure to advise its insured of benefits actually recoverable."

### (i). Standard of Review for Motion to Dismiss for Failure to State a Claim

Upon a motion to dismiss alleging plaintiff's failure to state a claim, all allegations in the complaint are to be accepted as true and construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Mississippi,* 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965). The court's inquiry is limited to whether the challenged pleadings set forth allegations sufficient to make out the elements of a right to relief. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Great Lakes Steel v. Deggendorf,* 716 F.2d 1101, 1105 (6th Cir.1983). The complaint should not be dismissed unless it appears without

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Lee v. Western Reserve Psychiatric Habilitation Ctr.,* 747 F.2d 1062, 1065 (6th Cir.1984).

### (ii). Analysis of Count III

■ Count III reads in full as follows:

15. That, ever since the time of the aforementioned accident, Defendant has had reasonable notice of the fact that the Plaintiff Minor required first party No Fault benefits, and as such, Defendant was under a duty to so advise Plaintiff; Defendant negligently breached this duty by failing to inform and/or advise Plaintiff and/or Plaintiff minor of Plaintiff's entitlement to the entire gamut of first party No Fault benefits which were potentially or actually recoverable by Plaintiff on behalf of the Plaintiff Minor, against the Defendant.

16. That more particularly, Recovery Unlimited was an agent of Defendant, and was assigned to oversee this matter by and on behalf of the Defendant; that in the course of same, Recovery Unlimited gained knowledge and/or had access to knowledge regarding the extent of the Plaintiff Minor's injuries and the said Plaintiff Minor's eligibility for the entire gamut of first party No Fault benefits, payable by Defendant; yet, [at] no time did Defendant or any representative of Recovery Unlimited ever advise and/or inform the Plaintiff or Plaintiff's minor of the potential or actual right to recovery of said No Fault benefits by Plaintiff against Defendant; this likewise constituted a negligent breach of duty attributable to Defendant, the principal of its aforementioned agent, Recovery Unlimited.

17. That as a consequence of the above, Plaintiff Minor's cognitive and/or physical and/or social development was stunted and/or stalled and/or delayed, all by virtue of the fact that the said Minor did not receive all of those reasonable and neces-

---

1. The affidavit of Renee Totty demonstrating that she is an expert competent to testify to the matters on which she has made her reports, and that

the matters to which she will attest are based on her personal knowledge, was submitted on June 16, 1994, pursuant to Fed.R.Civ.P. 56(e).

sarily incurred benefits to which he was potentially and/or actually entitled, by virtue of the provisions of the Michigan No Fault Law which were well-known to the Defendant but were unknown to the Plaintiff, and/or Plaintiff minor.

18. That in consequence of the above ... Defendant is not only liable for the total value of the benefits provided by the parents to the Minor, over and above normal parental services, but *in addition,* Defendant is also liable for the cognitive and/or physical and/or social deficiency and/or deficiencies suffered by Plaintiff Minor, over the years, up to the present and into the future, due to the fact that all of the entitled benefits were not received by the Minor, and for that, Plaintiff herein seeks money damages of a compensatory nature against the Defendant.

Apparently, in the instant case, plaintiff's minor did not receive the course of treatment recommended by the medical experts because, plaintiff alleges, Mutual Insurance's agent Recovery Unlimited Inc. failed to affirmatively notify plaintiff that the recommended care would be paid for by Mutual Insurance. Plaintiff claims that his son's condition was aggravated because he did not receive the recommended treatment.

Defendant argues in its motion that "no part of the No–Fault Act imposes any duty upon a carrier to advise as to No–Fault Benefits payable." Defendant's Brief at 14. In response, plaintiff points to no case law or statutory authority which would support its claim that the defendant insurance company owed plaintiff or plaintiff's minor a duty to advise as to the gamut of benefits available to them. Indeed, plaintiff's argument in response to defendant's motion for summary judgment on this count is that plaintiff is willing to dismiss Count III as it pertains to defendant Mutual Insurance. Plaintiff, however, seeks to amend its complaint to add Recovery Unlimited Inc. as a defendant under the same theory of liability alleged in Count III. Plaintiff's request to dismiss Count III as it pertains to Mutual Insurance and plead Count III against Recovery Unlimited Inc. leads the court to an analysis of plaintiff's motion to voluntarily dismiss and,

in the alternative, motion to amend and remand the case to the state court.

However, before analyzing that motion, the court holds that, as a matter of law, Count III of plaintiff's complaint does fail to state upon which relief could be granted. The duty owed plaintiff by Mutual Insurance arises out of the insurance contract between plaintiff and Mutual Insurance and out of the Michigan No–Fault Act that governs such contracts. Neither the insurance contract nor the Michigan statute creates any duty on the part of Mutual Insurance to act as plaintiff's advisor with respect to informing him of the insurance benefits that are covered by the insurance contract or provided by statute. Plaintiff and his wife maintained custody of their son. If medical experts recommended a course of treatment, plaintiff should have sought such treatment and then requested reimbursement from Mutual Insurance.

Therefore, defendant's motion for partial summary judgment on Count III, which is, in effect, a motion to dismiss Count III, shall be granted.

### C. Plaintiff's Motion to Voluntarily Dismiss Without Prejudice and, in the Alternative, Motion to Amend and Remand

Plaintiff seeks the court's permission to voluntarily dismiss the action without prejudice in order that plaintiff may refile his action in state court joining both the diverse defendant Mutual Insurance and the non-diverse defendant Recovery Unlimited Inc. In his supplemental reply brief of June 14, 1994, plaintiff asks that his motion to dismiss be considered, in the alternative, as a motion to amend the complaint to add Recovery Unlimited Inc. as a defendant, and motion to remand to state court for lack of diversity.

■ Section 1447(e) of the federal removal statute provides that:

If after removal the Plaintiff seeks to join additional Defendants whose joinder would destroy subject matter jurisdiction, the Court may deny joinder or permit joinder and remand the action to the State Court.

28 U.S.C. § 1447(e). Thus, because this case was removed from state court on diversity grounds, the proper procedure is for the court to consider plaintiff's motion as a motion to amend to add a non-diverse defendant and motion to remand to state court for lack of diversity.

Fed.R.Civ.P. 15(a) provides that after service of a responsive pleading, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." In the instant case, discovery has closed. Thus, the action is long past service of the responsive pleading. And the adverse party, Mutual Insurance, opposes the motion to amend.

■ The court therefore must determine whether justice requires granting plaintiff leave to amend. In determining whether to allow an amendment, the district court may consider several factors including "undue delay in filing, lack of notice to the opposing party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the amendment." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 112 (6th Cir.1989), *cert. denied sub nom.,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Because the court finds that Count III fails to state a legally cognizable claim for relief, allowing plaintiff to amend the complaint to plead the same claim against Recovery Unlimited Inc. would be futile. Recovery Unlimited Inc.'s connection to plaintiff arises out of its contractual relationship with Mutual Insurance to act as Mutual Insurance's agent in overseeing the case of Dustin Wynn. As the agent of Mutual Insurance, Recovery Unlimited Inc. could owe no greater duty to plaintiff than the duty that is owed plaintiff by Mutual Insurance.

Plaintiff's counsel, however, claims that evidence uncovered during discovery reveals that Recovery Unlimited Inc. can be held liable as a principal, and not merely as the agent of Mutual Insurance. During his recent deposition, David Huntington, the Recovery Unlimited Inc. employee charged with handling Dustin Wynn's case, made the following response to the following question:

Q: All right. Do you recall what you would have said, if anything, to Mr. and Mrs. Wynn along those lines.

A: It would have been in the gender that I mentioned at the beginning; that I'm here representing the insurance company to see that we can get the best treatment possible.

Plaintiff's June 14, 1994 Supplemental Reply at 4. From this question-answer of Huntington, which the court notes is speculative both in the phrasing of the question and the phrasing of the answer, plaintiff's counsel concludes that

Whereas Mr. Huntington represented to Mr. Wynn that his purpose on behalf of Recovery Unlimited was to see to it that the best treatment could be gotten for Dustin, this statement clearly represented either *an innocent or fraudulent misrepresentation.* Plaintiff's experts in this case, Marilyn Koster, M.A., C.C.C., S.L.P. and Richard Wiess, Ph.D., will testify that, given the circumstances of Dustin's injuries, his needs and his lack of treatment, Recovery Unlimited was derelict not only in failing to see to it that the appropriate services were offered to the Wynn family for Dustin, but also that Recovery Unlimited was, by its inactivity, not living up to the representations made by Mr. Huntington. Seen in this light, Recovery Unlimited could easily be liable for innocent misrepresentation or fraudulent misrepresentation or even negligence.

*Id.* (emphasis added).

■ Plaintiff's counsel offers to the court no case law or statutory authority supporting his claims that this statement could possibly constitute innocent or fraudulent misrepresentation. In fact, under Michigan law, this statement could constitute neither. Michigan law only permits the innocent misrepresentation cause of action when the alleged misrepresentation was made in the context of contract negotiations. *United States Fidelity & Guar. Co. v. Black,* 412 Mich. 99, 117–18, 313 N.W.2d 77 (1981) (one of the six elements of a claim for innocent misrepresentation is a showing that the representation was made in the course of making a contract). In the instant case, plaintiff makes

no allegation that the representation was made in the course of contract negotiations, nor do the facts alleged support an inference that such negotiations were underway. In fact, the only contract at issue in this case is that between plaintiff and Mutual Insurance which was entered into several years before the alleged representation was made.

■ The representation allegedly made by Huntington also fails to support a claim of fraudulent misrepresentation. To recover for fraud under Michigan law, it must appear (1) that the defendant made a material misrepresentation, (2) that such representation was false, (3) that when such representation was made, the defendant knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion, (4) that defendant made it with the intention that it should be acted or relied upon by plaintiff, (5) that plaintiff acted in reliance upon it, and (6) that plaintiff thereby suffered injury. *Wilson v. Kiss,* 751 F.Supp. 1249, 1255 (W.D.Mich.1990), *citing Hi–Way Motor Co. v. Int'l Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813 (1976). As a general rule, a misrepresentation must relate to an existing or pre-existing fact. *Id., citing Platsis v. E.F. Hutton & Co., Inc.,* 829 F.2d 13 (6th Cir.1987); *Higgins v. Lawrence,* 107 Mich. App. 178, 309 N.W.2d 194 (1981). Promises to render future performance may not serve as the basis for a claim of fraud. *Id. citing Connellan v. Himelhoch,* 506 F.Supp. 1290 (E.D.Mich.1981); *Boston Piano & Music Co. v. Pontiac Clothing Co.,* 199 Mich. 141, 165 N.W. 856 (1917).

In the instant case, the representation made by Huntington was not false. The parties in fact agree that Recovery Unlimited Inc. was retained by Mutual Insurance to see that Mutual Insurance "obtained the best medical services possible." Huntington's speculative recollection that he would have said to plaintiff something "in the gender of ... 'I'm here representing the insurance company to see that we can get the best treatment possible,'" therefore was not false.

Assuming Huntington spoke these precise words, there is the question of to whom Huntington was referring by use of the word "we?" Although it arguably refers to the insurance company and Recovery Unlimited Inc., plaintiff apparently claims that "we" included plaintiff and his wife. Huntington, plaintiff claims, was representing to plaintiff by this statement that Huntington was assuming responsibility for obtaining treatment for plaintiff's son and/or advising plaintiff of what treatment was covered by the insurance contract and no-fault laws. However, if one assumes that Huntington's use of the word "we" did in fact include the parents of Dustin Wynn, the statement of Huntington could only be construed as a future promise to act on behalf of Dustin Wynn's parents in deciding upon and obtaining treatment for their son.

A future promise may be the basis for an action for fraud only if it appears that the promise was made in bad faith and without a present intention to perform. *Id., citing Hi–Way Motor, supra.* Assuming Huntington intended this use of the word "we" to imply that he was assuming responsibility to decide upon and obtain medical treatment for plaintiff's son, plaintiff makes no allegation that Huntington made this promise in bad faith and without any intention of performing that promise, nor are there any facts alleged that would support an inference of bad faith. Furthermore, there is no allegation that Huntington intended that plaintiff would rely on the representation, and there is no allegation that plaintiff in fact relied on it. Thus, Huntington's statement, no matter how it is analyzed or interpreted, simply does not provide support for a claim of fraudulent misrepresentation.

■ As a third basis of liability, plaintiff's counsel also attempts to allege negligence against Recovery Unlimited Inc. At oral argument of this motion, plaintiff's counsel expanded on this claim of negligence and breach of assumed duty. Plaintiff's counsel seeks to amend the complaint to allege that Huntington, acting on behalf of Recovery Unlimited Inc., assumed a duty to decide upon and obtain treatment for plaintiff's son and/or to advise plaintiff and his son of what was the best medical treatment and what treatment Mutual Insurance would cover; and that Recovery Unlimited Inc. was negligent in carrying out this assumed duty be-

cause it failed to obtain for plaintiff's son closed head injury care, as recommended by the personnel of Saline Community Hospital in August 1990. Plaintiff claims that his son suffered damages because he did not get this recommended treatment in a timely manner.

Again, plaintiff's counsel offers no Michigan law demonstrating that one may assume a legal duty to help another in the manner that Huntington allegedly offered to help plaintiff. The only Michigan case law the court finds on the issue of assumed duty are cases which address rescue situations. Though the facts of this case are not analogous to a rescue situation, the rule of law set forth in the rescue cases is arguably applicable. Thus, the court shall analyze the allegations plaintiff seeks to make against Recovery Unlimited Inc. to determine if there is any possibility that it could be held liable under a negligence theory based on the statement of Huntington.

The rule of law with respect to the assumption of duty is that "if one voluntarily assumes the duty of lending aid, he is required to do so with reasonable prudence and care." *Farwell v. Keaton*, 51 Mich.App. 585, 590, 215 N.W.2d 753 (1974). However, the person who assumes a duty to lend aid to another is not required to continue to render his services indefinitely, or even until he has done everything in his power to aid and protect the other. "The actor may normally abandon his efforts at any time unless, by giving the aid, he has put the other in a worse position than he was in before the actor attempted to aid him." *Id.* at 592, 215 N.W.2d 753, *citing* Restatement Torts, 2d, § 323, comment c, at 137.

> Liability in cases involving abandonment of an assumed duty or negligence in its performance has generally been predicated upon a finding that the acts of the defendant have "made the situation worse, either by increasing the danger, or by misleading the plaintiff into the belief that it has been removed, or depriving him of the possibility of help from other sources, as where he is induced voluntarily to forego it."

*Id.*

In plaintiff's case, from plaintiff's own exhibits it is clear that plaintiff himself was apprised of the treatment program that was recommended for his son. In August 1990, Dustin Wynn attended various treatment programs at the Saline Community Hospital in Saline, Michigan. At the end of those treatment programs, reports on Dustin's progress and status were drawn up and sent to Recovery Unlimited Inc. Those reports are attached to Plaintiff's April 1, 1994 Reply Brief as Exhibits 4, 5, 6, and 7.

All of the reports indicate that Dustin's parents were extensively involved in the August 1990 treatment programs. They brought him to the treatment sessions and sometimes sat through the sessions. They met with a psychologist regarding Dustin's and the family's need for psychological and family counseling. And, most significantly, the reports indicate that Dustin's father participated in the "team meeting" of September 4, 1990, attended by all of Dustin's therapists, wherein "it was concluded that Dustin needs an intensive closed head injury program." *Id.* at Exhibit 5.

Thus, this case does not involve a situation where Dustin Wynn was deprived of the possibility of help from other sources. His parents were apprised of the treatment he needed. Though plaintiff's supplemental reply states that the services recommended by the treatment team "inexplicably ... have not been provided by either Recovery Unlimited or State Auto, to date," Plaintiff's June 14, 1994 Supplemental Response at 4, plaintiff offers no explanation for why, if they knew their son needed certain care, plaintiff and his wife did not seek out treatment for their son themselves and then request reimbursement from the insurance company.

For the foregoing reasons, the court finds that even assuming all of plaintiff's factual allegations are true, plaintiff could not state a claim against Recovery Unlimited Inc. upon which relief could be granted. Thus, the amendment would be futile. Plaintiff's motion to voluntarily dismiss and, in the alternative, motion to amend and remand therefore shall be denied.

### ORDER

Therefore, it is hereby **ORDERED** that defendant's motion for partial summary judg-

ment is **DENIED** as it pertains to Count I of the complaint;

It is further **ORDERED** that defendant's motion for summary judgment as to Count III, which, in effect, is a motion to dismiss for failure to state a claim, is **GRANTED** and Count III is hereby **DISMISSED.**

It is further **ORDERED** that plaintiff's motion to voluntarily dismiss the complaint without prejudice and, in the alternative, motion to amend the complaint and remand the case for lack of diversity jurisdiction, is hereby **DENIED.**

**SO ORDERED.**